THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. GRANT R. ALLEN, Appellant.

Argued May 15, 1950; decided July 11, 1950.

*Edward E. Edstrom* and *Robert M. Blakeman* for appellant. Defendant was tried, convicted and sentenced by a court which was illegally constituted and all proceedings had therein are a nullity. (*People* v. *Fancher,* 50 N. Y. 288; *Matter of Malloy,* 278 N. Y. 429; *Matter of Munger,* 10 App. Div. 347; *People* v. *Rockower,* 51 N. Y. S. 2d 185; *Reed* v. *Bradford,* 141 Ark. 210; *Fay* v. *District Court of Appeals,* 200 Cal. 522.)

*Frank A. Gulotta, District Attorney* (*Philip Huntington* of counsel), for respondent. The court in which defendant was tried, convicted and sentenced was legally constituted and the proceedings had therein are valid. (N. Y. Const., art. VI, § 11; *Matter of Sloat* v. *Board of Examiners,* 274 N. Y. 367; *Matter of Pardee,* 259 App. Div. 101; *Sylvia Lake Co.* v. *Northern Ore Co.,* 242 N. Y. 144; *Ostrander* v. *People,* 29 Hun 513; *Pike* v. *City of Chicago,* 155 Ill. 565.)

DYE, J. Having been indicted by the Nassau County Grand Jury for the crime of perjury, second degree (Penal Law, §1620-b), the defendant-appellant was tried in Nassau County Court before Honorable JAMES W. LIDDLE and a jury. The

judgment of his conviction has been unanimously affirmed in the Appellate Division (Second Department) and is now before us by permission of the Chief Judge of this court on the question of whether such conviction was had in a duly constituted court.

Judge LIDDLE, County Judge of Schenectady County, was serving in Nassau County Court, Part III, at the request of Honorable HENRY J. A. COLLINS, County Judge of Nassau County, who at the time was holding Part I. Judge DONAHUE, County Judge of Putnam County, was holding Part II but we are not concerned with his authority which has not been challenged. The record shows that the trial calendar was overcrowded at the time and many persons charged with crime were in jail awaiting trial.

The Constitution of the State of New York, section 11 of article VI, provides that: " A county judge of any county outside the city of New York may hold the county court in any other county *when requested* by the county judge of such other county ". By section 76 of the Civil Practice Act, a county judge when acting in another county by request " may exercise all the powers and perform all the duties of the county judge of such other county ". (Italics supplied.) Such constitutional and statutory provisions impose no condition or limitation on the making of a " request " or the performance of the judicial functions incident thereto. Nor may any be implied from the further constitutional provision that: " in case of the death, absence, or incapacity of a county judge * * * the governor may designate a county judge of another county to hold the county court during such vacancy, absence, or inability to act." This clearly contemplates a situation where the county judge is not in a position to make the request which, obviously, is not this case.

The Constitution envisages a county court in each of the sixty-two counties without condition or limitation as to whether its business is conducted in one or more parts. In either event it must be deemed a county court and, in this respect, is no different than the functioning of the Supreme Court in parts *(Matter of Malloy,* 278 N. Y. 429). No contrary conclusion may be drawn from the circumstance that the Legislature has specifically authorized certain county courts to conduct their business in parts, for to that extent section 42 of the Code of Criminal Procedure is an act of sanction and, as such, is superfluous. It

may not be read as an act of limitation or, if so read, it obviously must yield as an unauthorized encroachment on the powers of the county court authorized by the Constitution. It is axiomatic that the Legislature in performing its law-making function may not enlarge upon or abridge the Constitution. Judge LIDDLE's act in holding Nassau County Court while the regularly elected county judge was neither absent nor incapacitated but, in fact, present in the county and holding Part I, had constitutional authority, and having such, Part III was, therefore, a duly constituted session of the Nassau County Court.

We wish to note also, that the conviction is supported by the overwhelming weight of the evidence and that no errors were committed at the trial warranting a reversal.

The judgment should be affirmed.

CONWAY, J. (dissenting). Defendant was indicted by the Grand Jury of Nassau County for the crime of perjury in the second degree (Penal Law, § 1620-b). He was tried on June 7–8, and 14–15, 1948, in a so-called " Part III " of the Nassau County Court before the County Judge of Schenectady County, who was referred to in the record as " Acting Nassau County Judge ", although there was no such statutory title. Defendant was found guilty by the verdict of a jury and was sentenced to imprisonment for one year. It is undisputed that on the first day of the trial, June 7, 1948, there were three so-called " parts " of the Nassau County Court in operation — the County Judge of Nassau County and the County Judge of Putnam County, were presiding in two of the " parts ", while the County Judge of Schenectady County, as noted, was presiding in " Part III ".

Before any proceedings were had, defendant's counsel asserted that the court was illegally constituted. A hearing was held at which the Nassau County Judge appeared and stated that he was then actually engaged in the trial of another case, that the condition of the calendar was " very crowded " and that he had signed a certificate requesting services " in Part III " of the County Judge of Schenectady County. Defendant's motion was then denied and the trial proceeded as indicated.

The primary question before us upon this appeal is whether the County Judge of Nassau County was authorized to bring

in county judges of other counties to hold court, while he himself was actually presiding as County Judge over another trial in the Nassau County Court. Phrased in another way, the question is whether the Nassau County Judge possessed any constitutional or statutory authority to divide the Nassau County Court into " parts ", all functioning at the same time and presided over by county judges brought in from other counties.

After careful consideration of the history of the County Court in this State, the successive provisions of the New York State Constitution and the repeated acts of the Legislature with reference thereto, and similar constitutional and legislative provisions with reference to other courts in this State, we have concluded that the Nassau County Judge was without any authority, constitutional or statutory, to call in an additional county judge from another county to preside over a second or third " part " of the Nassau County Court, at a time when he was presiding as County Judge. We are unable to agree with the contention of the People that any such authority is conferred by the provision of section 11 of article VI of the New York Constitution, which, at the present time, reads in part as follows: " * * * A county judge of any county outside the city of New York may hold the county court in any other county when requested by the county judge of such other county; * * *." We think this provision can have reference solely to a situation where, for instance, the county judge is on vacation, is absent from the county, is temporarily incapable of holding court or is disqualified from presiding over a particular case, in which event, he may call in the county judge of another county, not as an additional judge, but as a substitute in his place and stead. As we shall show, that provision was not intended to enlarge the size of the County Court in which a county judge from another county might be requested to preside, but was merely intended as a grant of *power* to county judges to exercise judicial functions, in certain instances, outside of the county in which they were elected.

The predecessor of the County Court was the Court of Common Pleas, established by colonial statute in 1691. (2 Lincoln's Constitutional History of New York, p. 153.) The court was held by a Supreme Court justice and three justices

appointed in each county, or by any three of them, and it possessed general common-law jurisdiction. Without specific mention, the court was continued by section 35 of the Constitution of 1777 which continued the colonial statutes in effect. No change was effected by the next Constitution of New York in 1821, which, in section 6 of article V merely provided for the tenure of " Judges of the county courts ". Such was the court when the Constitutional Convention of 1846 began its work. At that convention, the majority of the judiciary committee was in favor of the abolition of the County Courts, as then organized. Argument was made " that the courts of common pleas had, in a great degree, been deserted by suitors ", and that, in civil cases before a jury, a single judge was more efficient than three judges. (2 Lincoln's Constitutional History of New York, p. 155.) Delegates referred to the existing county courts as a " nuisance " (1846 Debates, pp. 684, 706), and it was said that they had been " reduced to such a feeble condition, that they no longer commanded public confidence " (pp. 696, 724). A proposal was made that there should be one county judge for each county and that the Legislature should be denied the power to add county judges as " there were 295 of these judges scattered throughout the state — so many, in short, that the very title became obnoxious." (P. 803.) Many other suggestions were made, among which were the following: (1) that a number of county judges should be elected to hear cases in the part of the county where the cause of action arose (p. 691), (2) that one or more judges, but not to exceed three in any county, should be elected depending upon the business and the population in the county (p. 797), (3) that one judge should be elected in each county to exercise appellate jurisdiction over all justice of the peace causes, but having no original jurisdiction, although being required to perform the duties of a surrogate and to preside over such criminal cases as might be prescribed by the Legislature (p. 797), and (4) that a judge should be elected in each county, with such additional judges, not exceeding two, as might be authorized by the Legislature (p. 798). All these proposals were rejected in favor of a provision which established one county judge in each county, except the city and county of New York. (1846 Debates, p. 803.) As the result of this Convention, the Constitution of 1846 provided (art.

VI, § 14): "There shall be elected, in each of the counties of this State, except the city and county of New York, one county judge, who shall hold his office for four years. He shall hold the county court, and perform the duties of the office of surrogate. * * * "

Except in "special cases" prescribed by the Legislature, the County Court was to have no original civil jurisdiction, acting only as an appellate court for cases arising in the justices' courts (§ 14). In addition, the county judge, with two justices of the peace, was to hold "courts of sessions" for the trial of criminal cases (§ 14). In counties exceeding 40,000 in population, the Legislature could provide for the election of a separate officer to perform the duties of the office of surrogate (§ 14). Finally, in section 15 of article VI, the Constitution of 1846 provided that the Legislature might, on application of the county board of supervisors, provide for the election of local officers, not to exceed two in any county, to discharge the duties of county judge and of surrogate *in cases of their inability or of a vacancy.* No such substitute county judge was ever requested from the Legislature by the Board of Supervisors for Nassau County.

The next Constitutional Convention was held in 1867 and 1868, and resulted in the adoption of the Judiciary Article of 1869 in the Constitution. The new Judiciary Article (VI) provided, in section 15, that "The existing county courts are continued * * *." The Convention was concerned primarily with proposals to enlarge the civil jurisdiction of the county courts. As a result, the new Judiciary Article of 1869 granted certain original civil jurisdiction to the county courts, and empowered the Legislature to enlarge it further. The "courts of sessions", composed of the County Judge, with two "side" justices of the peace, were continued. It was at this time that the predecessor of the sentence, relied upon by the People in the instant case, and quoted above at page 291, first appeared in the Constitution. It then read as follows: "* * * The county judge of any county may preside at courts of sessions, or hold county courts, in any other county except New York and Kings, when requested by the judge of such other county."

This provision was twice read to the delegates at the Convention and, on each occasion, there was no comment and no amend-

ments were offered.   (1867–1868 Debates, Vol. 4, pp. 2609, 2676.) This was unusual since there had been prolonged and vigorous discussion as to almost every other provision in the Judiciary Article.   It would thus appear that all the delegates were aware of, and in agreement with, the purpose of the new provision. The reason for that unquestionably lay in the fact that, about fifteen years before, in 1852, the Legislature had unanimously passed a bill entitled "An act authorizing county judges to *exchange with each other* in holding county courts", (emphasis supplied) which, however, had been vetoed by the Governor. The exact wording of the bill is no longer available, it having been destroyed by the fire in the Capitol in Albany, but its title just quoted and the message from the Governor accompanying his veto show clearly that its sole purpose was to permit county judges to "exchange with each other" in a particular case over which one of them was legally disabled from presiding. There is no indication whatever that the bill was intended to permit a county judge to divide his court into parts and to call in another county judge or judges to sit concurrently with him. The Governor's veto was based upon the conclusion that the bill conflicted with section 14 of article VI of the Constitution of 1846 which provided, as we have seen, for the election of one county judge in each county, and which impliedly forbade such locally elected judge from exercising judicial functions outside the physical confines of the county in which he had been elected by his constituency.   For convenience, we have quoted the Governor's message in full in the margin.*   The volume, printed in 1909, containing the message of the Governor also includes this statement, "The bill was not passed over the veto.   The judiciary article of 1869, section 15, expressly conferred authority on the county judge to hold court in another county" (Messages from the Governors, Vol. 4, p. 627) — a further indication that the constitutional provision of 1869 was the direct result of the unsuccessful legislative action in 1852.

---

* MESSAGES FROM THE GOVERNORS, Vol. IV, pp. 625–627 (Governor Washington Hunt, 1852)

"March 31.   To the Senate:

"*Veto of a bill entitled 'An act authorizing county judges to exchange with each other in holding county courts.*                    ,

'The bill conflicts, as it seems to me, with the fourteenth section of article six of the Constitution.   That section provides "that there shall be elected in

each of the counties of this State, except the city and county of New York, one county judge, who shall hold this office for four years." These words clearly imply, that the county judge is to be elected in the county and for the county; it is not perceived how the Legislature can designate or appoint any other person than the one so elected, to perform the duties of the county judge, either permanently or temporarily; that the person designated is a judge of some other court or county, cannot affect the constitutional question. As the office of county judge in any one county is an elective office by the people of that county, it cannot be within the legislative competency to confer the powers of the office upon any other person. His jurisdiction is necessarily confined to his county, and he cannot by virtue of his election perform any official act out of its limits. It has been held by the supreme court (Warner v. People, 2 Denio's Reports, 272) that a law authorizing the appointment of a person to perform the duties of an officer made elective, by the people, by the Constitution, was a violation of that instrument; and this judgment was affirmed by the court for the correction of errors with great unanimity. It is scarcely necessary to remark, that if the Legislature could not authorize such an appointment by others, it could not make it directly itself; but this bill in fact, gives to a county judge the power of appointing some other county judge to perform his duties.

'The same fourteenth section, of the sixth article of the Constitution, after providing for the election of a county judge in each county, declares "he shall hold the county court." Upon the well known principle that the conferring a public authority upon one officer, is necessarily an exclusion of all others, this provision becomes restrictive, and forbids the holding the county court by any other person or officer, except as provided by the Constitution. The fifteenth section of the same article has made such provision, that on the application of the board of supervisors of a county, the Legislature may provide for the election of local officers to discharge the duties of county judge and surrogate, in case of their inability, or a vacancy in office. In the absence of any other provision on the subject, this is sufficient to show that the convention could not have contemplated the designation of any person by the Legislature or under its authority, to perform the duties of a county judge who was not elected for that purpose. An easy and sufficient remedy being thus provided by the Constitution for avoiding the inconveniences anticipated by the bill before me, there can be no reason for trenching upon the very distinct enactments of that instrument. The judiciary act of 1847, (section 31, chapter 470) provides, that whenever a cause or matter shall be pending in any county court, in which the judge of such court shall have been attorney, solicitor, or counsel, or shall be interested, on his making and filing a certificate of the fact, jurisdiction of such cause or matter shall be vested in the supreme court. If the provision here referred to is not deemed sufficient, I would recommend further legislation to facilitate the removal of suits from the county court to the supreme court, in such cases.

'Entertaining the constitutional objections above expressed, I deem it my duty to return the bill to the Senate for re-consideration.'"

The next Constitution, that of 1894, also continued the existing county courts. Certain changes in the civil jurisdiction of the county courts were made, but the major departure in that Constitution was the abolition of the old " courts of sessions ", composed of the County Judge and two " side " justices of the peace. The new Constitution (art. VI, § 14) provided that all the jurisdiction of the old Court of Sessions in each county should be vested in the County Court thereof.

As noted, since 1846, there had been only one county judge permitted under the Constitution in each of the counties of the State. In 1885, an amendment to the Constitution was proposed in the Legislature to provide for an *additional* county judge for Kings County. (2 Lincoln's Constitutional History of New York, pp. 590, 712, 725.) In 1893, the amendment was again proposed in the Legislature and was actually passed in two successive years and adopted by the People in 1894, but the purpose of the amendment was accomplished, and it was superseded by, the new Constitution of 1894, which in section 14 of article VI provided: " In the county of Kings there shall be two county judges and the *additional* county judge shall be chosen at the next general election held after the adoption of this article." (Emphasis supplied.)

There followed in the next twenty years numerous attempts on the part of several of the more populous counties in the State to amend the Constitution to secure additional county judges. In 1901, 1908 and 1910, it was proposed to give Kings County, which already had two county judges, two to four additional county judges. (3 Lincoln's Constitutional History of New York, p. 687; New York State Constitutional Convention Committee Report, 1938, Vol. II, pp. 437–441.) Likewise, in 1910, it was proposed to authorize an additional county judge in the counties of Queens and Westchester. (Constitutional Convention Committee Report, 1938, Vol. II, pp. 441–447.) None of these proposals was submitted to the People. In 1911, another proposal to authorize two additional county judges in Kings County was submitted to the People, but rejected. (*Op. cit., supra,* pp. 447–478.)

Finally, in 1913, in response to this continued pressure by the more populous counties, an amendment to the section of the Constitution dealing with the County Court was drafted and

adopted by the People. The new section 14 of article VI authorized two additional county judges for Kings County. Moreover, there was also included and adopted at that time a provision — repeatedly, but unsuccessfully, proposed at preceding constitutional conventions — that the *Legislature,* under certain circumstances, might increase the number of county judges in any county. The new constitutional provision reads as follows:  " * * *  The number of county judges in any county may also be increased, from time to time, by the legislature, to such number that the total number of county judges in any one county shall not exceed one for every two hundred thousand, or major fraction thereof, of the population of such county.  * * * "

In 1925, the Constitution was further amended by the addition of the Judiciary Article of 1925, section 11 of which, dealing with the County Court, is presently in force in this State. The number of county judges in Kings County was raised to five and in Bronx County to two. The provision, above quoted, authorizing the Legislature to increase, from time to time, the number of county judges in any county in proportion to the population was continued without change. The phraseology of the sentence which empowers a county judge to hold court in another county when requested by the judge of such other county was amended so as to read in its present form, quoted *supra,* page 291. At the same time, new matter was added to that sentence, so that the complete sentence, at the present time, reads as follows:  " * * *  A county judge of any county outside the city of New York may hold the county court in any other county when requested by the county judge of such other county; and, in case of the death, absence, or incapacity of a county judge, in a county having no special county judge then able to serve, the governor may designate a county judge of another county to hold the county court during such vacancy, absence, or inability to act." The minutes of the Judiciary Convention of 1921, which recommended this new matter, make clear that the provision empowering the Governor to designate a county judge of another county to hold the County Court in cases where the county judge has died, is absent or is incapacitated, and where there is no special county judge, was intended " to bridge over a temporary cessation of the functions of the

County Court '' and to make sure that the court would not '' go down for the reason that no one was designated to hold it ''. (Constitutional Convention Committee Report, 1938, Vol. IX, pp. 567–569). The added new matter thus has application to a situation not presented here.

There was no discussion as to the reasons for the change in the phraseolgy of the provision granting power to the county judge to hold court in a county other than his own when requested by the county judge of such other county. The committee debates on an identical provision with reference to the Surrogate's Court, however, sheds some light upon the county court provision. In the Executive Committee draft of what is now section 13 of article VI, there was included the following: '' A surrogate of any county may hold a surrogate's court in any other county when requested by the surrogate of such other county.'' One committeeman from New York City commented that, while the representatives of New York City were not particularly interested in the provision, '' I understood from some of the surrogates that this provision would be very helpful up-State *to enable a surrogate who was for any reason unable to hold court, to call in a surrogate from an adjoining county to hold court temporarily for him.*'' (Pp. 571–572. Italics supplied.) Objection was made that there was no pressing need for calling in a surrogate from another county, but the basic objection was '' that by reason of the peculiarly intimate business which the surrogate transacts, it seems to me a little unwise to call in an outside surrogate. *I think the call in the absence of the surrogate does not go on the same platform with the calling in of an outside county judge,* and I have in mind questions of allowance, simple money transactions where the outside surrogate is not quite as likely to feel the responsibility of what he is doing as a local surrogate. I think a great deal of danger lies in that section.'' (Pp. 572–573. Italics supplied.) The provision was stricken out.

This history of the successive *constitutional* provisions with reference to the County Court in this State makes certain basic principles clear. Since 1846, the premise underlying all discussions of the County Court has been that *there shall be but one county judge in each county.* Despite repeated demands by the more populous counties, it was not until 1894 that Kings

County alone was permitted to have an *additional* county judge (making two) and then only by *constitutional* amendment. Twenty years then passed before another *constitutional* amendment in 1913 permitted Kings County to have two *additional* county judges (making four) and Bronx County one (making two), and *for the first time*, the *Constitution* permitted the *Legislature* to increase the number of county judges but only within the limits of a population proportion formula.

We turn now to the statutory provisions enacted by the Legislature pursuant to this new power granted by the Constitution. First, the Legislature in 1915 added a fifth County Judge in Kings County, according to the express permission of the Constitution in view of its population. (Old County Law, § 230-a, now Judiciary Law, § 189, subd. 1.) In addition to the two county judges provided for in the Constitution for Bronx County, the Legislature has added two more (one in 1933 and the other in 1948), making a present total of four county judges therein (Old County Law, § 230-d; now Judiciary Law, § 189, subd. 2). The Legislature has further provided for one additional county judge in the counties of Monroe (1925), Queens (1931), and Erie (1925). (Old County Law, §§ 230-b, 230-c, 230-e; now Judiciary Law, §§ 183, 189, subd. 3; § 184.) In the case of the county of Westchester, the Legislature acted somewhat differently. No additional, locally elected county judge was authorized, but it was provided in 1936 that " the county judge of Westchester county, when in his opinion the business of the court requires it, may from time to time divide the county court into two or more parts which are to be held by the county judge of such county and/or by such county judge or judges from other counties as may be requested to act." (Old County Law, § 230-g; now Judiciary Law, § 186.) The language there employed is similar to that used in section 42 of the Code of Criminal Procedure, which at the time of the trial here, read in part as follows:. "A county court must be held by the county judge * * * except * * * in the counties of Erie, Westchester and Onondaga, where the county court may be divided into two or more parts, which are to be held by the county judge of such county and by such county judge or judges from other counties as may be requested to act, or by the said judge or judges of such other counties."

Those statutory provisions as to Westchester, Erie and Onondaga Counties expressly granted, pursuant to constitutional authority, the right to do that which the County Judge of Nassau County attempted to do here by a scratch of his pen. After the defendant's conviction in the instant case, but before the affirmance by the Appellate Division, the Legislature added the counties of Nassau and Suffolk to those listed in section 42 of the code. (L. 1949, ch. 176; L. 1949, ch. 276, eff. March 17 and March 25, 1949.) It is not contended that this belated action in any way affects the issues before us.

We thus find this situation: By constitutional mandate or by statute, as expressly permitted by the Constitution, there are *additional,* locally elected county judges in five counties (Kings, Bronx, Monroe, Queens and Erie). By statute, the Legislature, prior to the time of the trial herein, had authorized the county judges in Erie (1920), Westchester (1936), and Onondaga (1922), to divide the county courts in those counties into two or more parts. After the trial herein, the Legislature gave similar authorization to the county judges in the counties of Nassau and Suffolk.

In view of all this, we think it clear that, in the absence of a constitutional provision, or a legislative act pursuant to the constitutional permission, only one judge was legally authorized to hold the Nassau County Court at the time of trial. The action of the Nassau County Judge, in attempting to divide his court into three parts and in calling in additional county judges from other counties to hold concurrent parts of the court while he himself was also presiding in the court, was unauthorized and illegal. A different conclusion would ignore the mandate of the Constitution, which, for over one hundred years, has required that there be only one county judge holding the county court in each county, with strictly limited exceptions granted only after decades of pressure therefor. A different conclusion would ignore the repeated acts of the Legislature, pursuant to the constitutional grant of authority in 1913, providing for additional county judges, or additional parts of the county courts, in certain counties. These many Legislatures and the Governors by whom the bills were signed expressed the understanding of the people of the State and of the legal profession throughout the State, that but one county judge could hold

court in a county except in those instances where the People by constitutional amendment made other provision. The presumption is that the people of the State and the Legislature do not engage in vain and useless acts. On the contrary, it is presumed that every constitutional amendment and statute is intended to serve some necessary and proper purpose. As opposed to that presumption, it is no answer to say, as the District Attorney does here, that the legislative acts referred to " are actually superfluous ". The legislative construction of the Constitution here accords with our own.

As noted above, we believe that the People are incorrect in asserting that any such authorization may be found in the constitutional provision empowering a county judge of any county outside the city of New York to hold the county court in another county when requested by the county judge of such county. That provision, as we have demonstrated, merely granted the *power* (where otherwise there would be none) to a county judge to exercise judicial functions in certain limited instances outside the physical confines of the county in which he was elected. It does not in terms, or by necessary implication, authorize the creation by a county judge, by his own action, of concurrent parts in his own County Court. The construction proposed, it should be noted, would confer upon the county judge an unfettered power to increase without limit the number of county judges presiding in the county — a power which the Legislature itself may only exercise by constitutional permission in proportion to the population of the county.

Reference in the majority opinion to the power of the Supreme Court to divide itself into parts serves only to fortify and confirm the conclusion we have reached with respect to the County Court. It was only in 1905 that a constitutional amendment was adopted which authorized the Legislature to increase the number of Supreme Court justices according to a population proportion formula. (N. Y. Const., art. VI, § 1.) This marked a departure from the previous practice of fixing the number of justices in the Constitution and requiring a constitutional amendment to obtain an increase. Moreover, the Legislature has specifically authorized the trial term of the Supreme Court in *any* county to " be held in two or more parts ". (See Judiciary Law, § 148; see, also, §§ 86, 147.) As we have seen,

no such general authorization has been granted to the county judges of the State to divide their courts into parts.

It follows, then, that the so-called " Part III " of the Nassau County Court, which was presided over by the Schenectady County Judge at the request of the Nassau County Judge, and in which defendant was convicted and sentenced, was unauthorized and illegal. The Nassau County Judge was present in the county on the day of trial and was presiding over the only " part " of the Nassau County Court which was authorized by the Constitution. Since defendant's preliminary motion requesting that the Schenectady County Judge declare himself to be without legal authority under the Constitution to preside over the case should have been granted, the judgment of conviction may not stand.

The judgment of conviction should be reversed and a new trial ordered.

LEWIS, FULD and FROESSEL, JJ., concur with DYE, J.; CONWAY, J., dissents in opinion in which LOUGHRAN, Ch. J., and DESMOND, J., concur.

Judgment affirmed.