*173 OPINION OF THE COURT
Ralph Fabrizio, J.
These are two of the misdemeanor cases which have been transferred by order of the Administrative Judge of the Supreme Court, Bronx County, from Criminal Court of the City of New York, Bronx County, to the newly-created Supreme Court of the State of New York, Criminal Division, Bronx County. The order provides that the cases will be adjudicated “subject to the same substantive and procedural law as would have applied to it had it not been transferred.” (22 NYCRR 142.3.) The defendant seeks dismissal of these cases on two very narrow grounds. First, she claims that the Supreme Court does not have jurisdiction to try her because she is being prosecuted by information, arguing that Criminal Procedure Law § 210.05 serves as a jurisdictional bar to having a Supreme Court Justice preside over a misdemeanor case which is not being prosecuted by indictment. Second, the defendant alleges that the transfer of her cases as part of the “administrative transfer of all misdemeanor charges in Bronx County to Bronx County Supreme Court, Criminal Division,” violates the Equal Protection Clauses of the federal and state constitutions. The defendant’s motions are denied in their entirety. The transfer of these cases from the Criminal Court to the Supreme Court is consistent with both the relevant provisions of the Criminal Procedure Law and our State Constitution. Reading these relevant provisions together, it is clear that CPL 210.05 is directed to the district attorneys, who are being told that they must seek an indictment on any case before they are able to ask the Supreme Court to assert its trial jurisdiction. Neither CPL 210.05 nor any other part of the Criminal Procedure Law deprives the Supreme Court of its own ability to assert its trial jurisdiction over unindicted misdemeanor cases.[1]
On October 23, 2003, the defendant was charged with identity theft in the third degree (Penal Law § 190.78 [1]), unlawful possession of personal identification information in the third degree (Penal Law § 190.81), and criminal impersonation in the second degree (Penal Law § 190.25 [1]). These charges are all class A misdemeanors, and the crimes were alleged to have occurred on October 3, 2003. The defendant was arraigned on a criminal court complaint on October 24, 2003. The People filed support *174 ing depositions corroborating hearsay information contained in the complaint at the time of the arraignment, thereby converting it into an information.
Approximately six weeks later, on December 2, 2003, the defendant was arraigned on a felony complaint charging her with two counts of grand larceny in the fourth degree (Penal Law § 155.30 [1], [4]), two counts of criminal possession of stolen property in the fourth degree (Penal Law § 165.45 [1], [2]), identity theft in the third degree (Penal Law § 190.78 [1]), and unlawful possession of personal identification information in the third degree (Penal Law § 190.81). These crimes were alleged to have occurred between September 17, 2003 and November 22, 2003. On December 5, 2003, the People’s application to reduce the felony charges to petit larceny (Penal Law § 155.25) and criminal possession of stolen property in the fifth degree (Penal Law § 165.40), both class A misdemeanors, was granted. The People subsequently filed the necessary supporting depositions to corroborate the hearsay allegations in the accusatory instrument, thereby converting it into an information. No challenge has ever been made to the facial sufficiency of the accusatory instruments in either case.
Both cases were pending in New York City Criminal Court, Bronx County, until September 29, 2004. On that day, the judge presiding over the cases filed the administrative orders transferring each case to the Criminal Division of the Supreme Court, Bronx County. The order was made
“[plursuant to the authority ... of Article VI, section 19 (a), of the State Constitution, and pursuant to direction of the Chief Administrative Judge of the Courts as provided in ... 22 NYCRR § 142.2 (b) . . . and, further, upon a finding that it will promote the administration of Justice in Bronx County for selected components of the criminal caseload of its courts.”
The defendant subsequently filed these motions.
The Jurisdictional Issue
There are many well-researched and well-written decisions recognizing that the Supreme Court is empowered by the Constitution to preside over virtually any case. (See e.g. People v Darling, 50 AD2d 1038 [3d Dept 1975]; People v Gonzalez, 6 Misc 3d 1034[A], 2005 NY Slip Op 50291 [U] [Sup Ct, Bronx County 2005, Benitez, J.]; People v Robinson, 6 Misc 3d 645 *175 [Sup Ct, Bronx County 2004]; People v Turza, 193 Misc 2d 432 [Sup Ct, Suffolk County 2002]; People v Levandowski, 190 Misc 2d 738 [Sup Ct, Rensselaer County 2002]; People v Gutierrez, 2001 NY Slip Op 40290[U] [Sup Ct, Westchester County 2001, Angiolillo, J.].) Indeed, the Constitution clearly provides that the “supreme court shall have general original jurisdiction in law and in equity.” (NY Const, art VI, § 7 [a].) The current broad constitutional authority dates back to the period before the American Revolution. In fact, “[t]he origin of the Supreme Court is found in a statute of the Colony of New York which gave that court ‘Cognizance of all pleas, civill, criminall and mixt,’ ” including misdemeanors. (People v Rutiles, 172 Misc 306, 307 [Sup Ct, Orange County 1939].) Any attempt by the Legislature to limit the jurisdiction of the Supreme Court, by statute or otherwise, would be unconstitutional. (Decker v Canzoneri, 256 App Div 68, 71 [3d Dept 1939].) Thus, even where the Legislature has provided that a lower court has “exclusive jurisdiction” to preside over and try a particular type of misdemeanor, that statute cannot be interpreted to deprive the Supreme Court of its historical and constitutional power to preside over all misdemeanor cases. (See People ex rel. Folk v McNulty, 256 App Div 82, 88-92 [3d Dept 1939].)[2]
It is also clear under the Constitution that “[t]he Legislature shall have the same power to alter and regulate the jurisdiction and proceedings in law and in equity that it has heretofore exercised.” (NY Const, art VI, § 30.) Thus, the power to regulate procedure in the courts is “principally” the function of the Legislature. (Cohn v Borchard Affiliations, 25 NY2d 237, 247 [1969].) The Legislature can proscribe jurisdiction in the Supreme Court in certain limited situations pursuant to its rule-making authority. (See e.g. Sohn v Calderon, 78 NY2d 755, 767 [1991] [“constitutionally protected jurisdiction of the Supreme Court does not prohibit the Legislature from conferring exclusive original jurisdiction upon an agency in connection with the administration of a statutory regulatory program,” such as the Rent Stabilization Code]; Easley v New York State Thruway Auth., 1 NY2d 374 [1956] [only Court of Claims may hear cases involving causes of action against the state]; see generally Kagen v Kagen, 21 NY2d 532, 538 [1968].) But, a statute *176 which purports to be procedural in nature and has the effect of limiting the Supreme Court’s exercise of its trial jurisdiction over misdemeanor cases would have to be viewed as unconstitutional. (See People v Gonzalez, supra.)[3]
The defendant argues that CPL 210.05 acts to deprive the Supreme Court of trial jurisdiction over misdemeanor cases which are not being prosecuted by indictment, and since her cases are not being prosecuted by indictment, they should be dismissed. There is, of course, no constitutional requirement that a defendant charged with a misdemeanor be prosecuted by indictment. Article I, § 6 of the NY Constitution requires only that an indictment be filed when a defendant is being prosecuted for a felony. (See People v Green, 96 NY2d 195,199 [2001].) But, as the Court of Appeals has observed, this is “not a limitation directed to the courts, but rather to the State, and its function is to prevent prosecutorial excess.” (People v Ford, 62 NY2d 275, 282 [1984].) The right to prosecution by indictment in felony cases dates back to colonial times in New York. (See Matter of Simonson v Cohn, 27 NY2d 1, 5 [1970].) However, during colonial times misdemeanor cases could be prosecuted by information, just as they are today. And, the Supreme Court of Judicature, the predecessor of our current Supreme Court, was legally empowered to preside over misdemeanor cases being prosecuted by information.
The Supreme Court of Judicature was created by an act of the Legislature of the colony of New York dated May 6, 1691. In addition to giving the court the power to preside over all criminal cases, the act provided that the court “may remove out of any of the respective Courts of Mayor and Alderman, Sessions and Common Pleas any Judgement, Information or Indictment there had.” (1 Lyon, Laws of the Colony of New York, at 229 [1664-1719].) The power to transfer cases being prosecuted in other courts by information to the Supreme Court of Judicature was conveyed again by another act passed on November 11, 1692. (Id. at 306.) During this time, informations could be brought in the name of the government or by private citizens. In 1754, the colonial Legislature passed “[a]n Act to prevent Malicious Informations in the Supreme Court of Judicature in the Colony of New York.” This statute provided that individuals being prosecuted by information in the Supreme Court of Judicature were entitled to be awarded costs if they were not *177 found guilty. The sanctions did not apply if the informations were brought in the name of the colonial government or the Crown. Significantly, in enacting this law, the Legislature recognized that “it has hitherto been usual and customary in [the Colony of New York] to commence and carry on Prosecutions by way of Information in the said Supreme Court for Trespass Batteries and other Misdemeanors.” (3 Lyon, Laws of the Colony of New York, at 1007 [1739-1755].) During the colonial period, the Supreme Court of Judicature presided over trials in which the only accusatory instrument filed was an information. (See Goebel and Naughton, Law Enforcement in Colonial New York, A Study in Criminal Procedure, at 374-375, 377-378 [Commonwealth Fund 1944].)
Understanding the jurisdiction possessed and exercised by the Supreme Court of Judicature in colonial New York is important in evaluating why today’s Supreme Court can preside over cases being prosecuted by information. In enacting Judiciary Law § 140-b, the Legislature provided that:
“The general jurisdiction in law and equity which the supreme court possesses under the provisions of the constitution includes all the jurisdiction which was possessed and exercised by the supreme court of the colony of New York at any time . . . with the exceptions, additions and limitations created and imposed by the constitution and laws of the state.”
Thus, given the fact that the “supreme court of the colony of New York” had the legal authority to preside over misdemeanor cases brought by information, the current Supreme Court has that right as well.
Moreover, this was not just a right conveyed by the colonial Legislature to the Supreme Court of Judicature. The court’s power to preside over cases being prosecuted by information was not extinguished by the newly-created State Legislature after the Revolutionary War. Chapter 9 of the Laws of 1788, from the 11th session and passed February 6, 1788, contained a reenactment of the colonial law intended “to prevent malicious informations in the supreme court of judicature of this State for trespasses, batteries and other misdemeanors.” The law provided that the Supreme Court of Judicature was authorized to award costs to defendants who were found not guilty after trial. Unlike the colonial statute, the State Legislature did not exempt the government from liability for prosecuting defendants by informations deemed to be “malicious.”
*178 There can be little doubt, therefore, that the Supreme Court may legally and constitutionally preside over unindicted misdemeanor cases. The question then becomes whether CPL 210.05, which is procedural in nature, is a law that would serve to deprive the Supreme Court of its trial jurisdiction. This court concludes that the specific wording of this statute, as well as other statutes which specifically define the court’s jurisdiction, coupled with the legislative history of the Criminal Procedure Law, show that CPL 210.05 in no way restricts the Supreme Court’s ability to assert its trial jurisdiction in unindicted misdemeanor cases. If anything, the Legislature has chosen to place restrictions on parties seeking to litigate misdemeanor cases before the Supreme Court, and the statute merely provides a mechanism for prosecutors to gain access to the Supreme Court in misdemeanor cases.
In interpreting the meaning of statutes, courts should first examine the words chosen by the Legislature. “[W]here a statute is framed in language so plain as to make an explanation superfluous, one will not be attempted.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 71, Comment [1972]; see also People v Boston, 75 NY2d 585, 588 [1990].) The words chosen by the Legislature in CPL 210.05 demonstrate that it has nothing to do with the Supreme Court’s ability to assert its trial jurisdiction over misdemeanor cases.
The statute itself is entitled “Indictment and superior court information exclusive methods of prosecution” (CPL 210.05 [emphasis added]). The language of the statute prescribes that “[t]he only methods of prosecuting an offense in a superior court are by an indictment filed therewith by a grand jury or by a superior court information filed therewith by a district attorney” (id. [emphasis added]). By choosing the words “prosecution” and “prosecute,” it is clear that the Legislature was directing the statutes to the district attorneys, whose job it is to prosecute, and not to the courts. Courts do not have the power to “prosecute” cases; that job is constitutionally exercised by the executive branch of the government, through its agents, the district attorneys. (Matter of McDonald v Sobel, 272 App Div 455, 461 [2d Dept 1947], affd 297 NY 679 [1947].) Decisions about whether a case is to be prosecuted by indictment are usually left to the district attorney. (See People v Di Falco, 44 NY2d *179 482, 487 [1978].)[4] Because of the specific words chosen by the Legislature, CPL 210.05 should be read only as an “act of sanction,” and not as an act intending to limit the power of the superior courts, conveyed via the Constitution, to preside over misdemeanor cases. (See People v Allen, 301 NY 287, 289-290 [1950].) If the statute were to be interpreted in the way suggested by the defendant, it would be “an unauthorized encroachment on the powers of the [Supreme Court] authorized by the Constitution.” (Id. at 290.)[5]
The language of the statute from which CPL 210.05 was derived was very similar and was not interpreted as restricting the Supreme Court’s jurisdiction. The predecessor statute to CPL 210.05 was contained in Code of Criminal Procedure § 222. That statute, entitled “Crimes; how prosecuted,” provided that “[a] 11 crimes prosecuted in the supreme court . . . must be prosecuted by indictment.” This statute, along with other sections of the Code of Criminal Procedure specifically directed to the prosecutors, was held to be “declaratory ... of the common law” provisions recognizing that “[t]he power to prosecute crime and control the prosecution, after formal accusation had been made, was reposed in a prosecuting officer, an Attorney-General or a District Attorney.” (McDonald v Sobel, 272 AD2d at 461.) Thus, the text of this statute also should not be read as intending to restrict the jurisdiction of the Supreme Court.
The legislative history of the Criminal Procedure Law similarly supports the conclusion that CPL 210.05 was not intended to restrict the Supreme Court’s jurisdiction. At the outset, it is clear that the Criminal Procedure Law was never drafted with the idea that it would serve to limit the powers of the Supreme Court in any way. In fact, it was widely recognized at the time the statute was signed into law that one of the main *180 goals of the Criminal Procedure Law was to provide for “[a] revamped lower criminal court structure” (Governor’s Mem approving L 1970, ch 996, 1970 McKinney’s Session Laws of NY, at 3140 [emphasis added].) In its memorandum in support and explanation of the proposed Criminal Procedure Law, the members of the Commission on Revision of the Penal Law and Criminal Code observed that “the proposed Criminal Procedure Law bears little resemblance to the distinctly archaic Code of Criminal Procedure . . . [and] proposes numerous significant changes of substance in an attempt to provide a workable body of procedure accommodated to modern times.” (1970 NY Legis Ann, at 37.) The Commission recognized that the “lower criminal court structure” under the Code of Criminal Procedure was fraught with “defects and lack of logic,” and that the Criminal Procedure Law was meant to “simply describe[ ] what the lower criminal courts are and what they do.” {Id. at 38.)
Referring specifically to article 10 of the Criminal Procedure Law, which contains the sections defining the jurisdiction of the Supreme Court and the local criminal courts, the Commission noted that the purpose of this article was to group all of the lower criminal courts in existence under a single umbrella called the “local criminal courts,” and that this part of the statute “establishes its lower court procedure simply in terms of functions of ‘local criminal courts.’ ” {Id.) It was important for the Legislature to clarify the roles of the “local criminal courts” at the time, since the “rapid increase of crime in all its forms [had] placed a heavy burden on the entire criminal justice system.” (Governor’s Mem at 3141.) Significantly, no memorandum in the Bill Jacket contains any statement by anyone involved in the creation of the Criminal Procedure Law that the Legislature was attempting to restrict the jurisdiction of the Supreme Court by defining and clarifying the roles of the local criminal courts. Reading CPL 210.05 against the backdrop of the stated purpose of the legislation creating the Criminal Procedure Law, it is obvious that in enacting CPL 210.05, the Legislature was not seeking to limit the ability of the Supreme Court to preside over unindicted misdemeanor cases. If anything, the statutory language in the relevant sections of article 10 demonstrates that there was a conscious decision not to legislate such a restriction into the statute.
Section 10.20 of the Criminal Procedure Law is entitled “Superior Courts; jurisdiction.” The Supreme Court, a “[superior court” by definition (CPL 10.10 [2] [a]), has “trial jurisdic *181 tion of all offenses.” (CPL 10.20 [1].) The Legislature specifically recognized, as it had to, that the Supreme Court has “[t]rial jurisdiction of misdemeanors,” but noted that it was making that jurisdiction “concurrent with that of the local criminal courts.” (CPL 10.20 [1] [b].)[6] And, the Legislature further acknowledged that the local criminal court’s trial jurisdiction over misdemeanors was “subject to divestiture” by the Supreme Court “in any particular case.” (CPL 10.30 [1] [b] [emphasis added].) The Legislature did not say that the trial jurisdiction was subject to divestiture only in cases in which the defendant was indicted. This is significant because in other parts of the Criminal Procedure Law, the legislators did require that “divestiture” of jurisdiction from the local criminal court was required to be by “indictment” when either the district attorney’s office or a defendant sought removal of a case charging only misdemeanors to a superior court. (CPL 170.20, 170.25.)
The Legislature’s decision not to use the word “indictment” in the statute defining the Supreme Court’s trial jurisdiction over misdemeanors cannot be viewed as an oversight. In fact, the legislators did require grand jury action and/or indictments when defining the parameters of the Supreme Court’s jurisdiction in other parts of article 10. For example, the Legislature stated that “[l]ocal criminal courts have preliminary jurisdiction of all offenses subject to divestiture thereof in any particular case by the superior courts and their grand juries.” (CPL 10.30 [2] [emphasis added].) More germane to the issue before the court today, the Legislature did require that the Supreme Court could preside over cases in which “petty offenses” were charged “only when such an offense is charged in an indictment which also charges a crime.” (CPL 10.20 [1] [c] [emphasis added].)[7] Accordingly, in terms of jurisdiction, since the Legislature required an indictment be voted before the Supreme Court could *182 preside over a case charging only a petty offense, but did not specify that an indictment was required for the Supreme Court to assert its trial jurisdiction over misdemeanor cases, it is clear that CPL 210.05 cannot be read as an attempt by the Legislature to limit, the Supreme Court’s ability to exercise its trial jurisdiction over misdemeanor cases.[8]
In short, the Constitution, the Judiciary Law, and the Criminal Procedure Law plainly provide that the Supreme Court has jurisdiction to hear and try misdemeanor cases being prosecuted by information, and CPL 210.05 does not act as a bar to this authority. Accordingly, the defendant’s motions to dismiss based on her claim that the Supreme Court lacks trial jurisdiction because of this statute are denied.
The Equal Protection Claim
The defendant next argues that the cases must be dismissed because their transfer to Supreme Court violated her constitutional guarantee to equal protection. The defendant’s argument, at bottom, is that the administrative order transferring her cases to Supreme Court is part of some plan to discriminate against criminal defendants in Bronx County. According to defendant, since her cases were transferred as part of an “experiment” designed to do away with the lower criminal court in Bronx County, and since “criminal defendants in Bronx County” are a “class consisting primarily of Black and Hispanic *183 members,” the transfer violated her right to equal protection under the laws since cases involving criminal defendants in other counties, including “Nassau, Suffolk, Westchester and Rockland” are not being transferred.
“The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race.” (Washington v Davis, 426 US 229, 239 [1976].) In order to make out a prima facie case that an equal protection violation has occurred, the party making the claim must demonstrate, inter alia, that the government’s action was done with a “racially discriminatory purpose.” (Id.) In this case, the defendant has not alleged that the administrative transfer order in her case was made with any such purpose. Notably, contrary to the defendant’s claim, Bronx County is not the first nor only county in this state in which large numbers of misdemeanor cases have been transferred from a local criminal court to the Supreme Court by similar administrative orders. (See e.g. People v Levandowski [Rensselaer County]; People v Turza [Suffolk County]; People v Gutierrez [Westchester County].) Moreover, she has not alleged what negative impact the transfer of her cases will have on her. As Justice Davidowitz recently observed,
“[S]ince the Chief Judge’s order was intended to resolve misdemeanors pending in the Criminal Court swiftly and efficiently, defendant in a larger sense will be receiving significant benefits — an appropriate resolution of [her] case with all the protections afforded to [her] in the Criminal Court in the first place.” (People v Robinson, 6 Misc 3d at 648.)[9]
Accordingly, the defendant has failed to make out a prima facie case that her right to equal protection has been violated by transferring her cases to Supreme Court, and her motion to dismiss on this ground is denied as well.

. Although never specified in the moving papers, this court is treating these as motions to dismiss an information made pursuant to CPL 170.30 (1) (f).

. When the Constitution was amended in 1961 to create the Criminal Court of the City of New York, the amendment provided that the creation of this court “shall in no way limit or impair the jurisdiction of the supreme court” as set forth in the Constitution. (NY Const, art VI, § 15 [d].)

. No direct challenge to the constitutionality of CPL 210.05 is made in the motion before the court.

. In certain very limited situations in which a defendant is charged with a misdemeanor, a defendant can petition the Supreme Court for an “order that such charge be prosecuted by indictment and that the district attorney present it to the grand jury for such purpose.” (CPL 170.25 [1].)

. For years, Supreme Court Justices presiding over cases in which defendants are being prosecuted for felony charges have been transferring misdemeanor cases involving the same defendants from a local criminal court to the Supreme Court for the purposes of disposition. It is very common for a Supreme Court Justice to remove a misdemeanor case being prosecuted by information to Supreme Court and dismiss that case as covered by the disposition on the felony case. (See e.g. People v Clark, 291 AD2d 358 [1st Dept 2002].) No one has apparently ever challenged that process or suggested that the misdemeanor case be indicted before the Supreme Court Justice can acquire jurisdiction over it.

. Criminal Procedure Law § 1.20 (19) and (24) provide that the Supreme Court “has ‘tried jurisdiction’ of [a misdemeanor] when an indictment or an information charging such offense may properly be filed with such court, and when such a court has authority to accept a plea to, try or otherwise finally dispose of such accusatory instrument.” In these cases, the informations were filed in the Criminal Court of the City of New York, Bronx County, a court authorized to accept the filings of these pleadings (CPL 100.05 [1]), and the cases were transferred after these instruments were filed.

. One commentator has stated that “there is some question as to whether the Legislature can constitutionally restrict the supreme court from trial of a petty offense on an information.” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 10.20, at 97, citing People v Darling, 50 AD2d 1038 [3d Dept 1975].)

. The predecessor statute to CPL 10.20 (1) (a), Code of Criminal Procedure § 22 (2), did clearly provide that the Supreme Court had jurisdiction to “try all persons indicted for” all crimes (emphasis added). Arguably, therefore, under prior law the Legislature did make the existence of an indictment a prerequisite to the Supreme Court’s ability to exercise its trial jurisdiction over misdemeanor cases. (See People ex rel. Canizio v Superintendent of Kings County Hosp., 10 Misc 2d 40, 41-42 [Sup Ct, Kings County 1957].) At the time, however, the Supreme Court had independent authority to order that a case be presented to the grand jury on its own initiative. (Code of Criminal Procedure § 22 [1]; see People ex rel. Doe v Beaudoin, 102 AD2d 359 [3d Dept 1984].) The Legislature’s decision to take away the Supreme Court’s ability to direct grand jury investigations represented a significant change in the law. (Id. at 364.) Accordingly, the fact that the Legislature changed the language linking “jurisdiction” to “indictment” in terms of misdemeanor cases when it repealed the Code of Criminal Procedure cannot be termed a “minor, unexplained omission in connection with a general revision of a statute.” (Matter of Brooklyn Union Gas Co. v Commissioner of Dept. of Fin. of City of N.Y., 67 NY2d 1036, 1039 [1986].) Thus, this legislative omission should be deemed purposeful. (Beaudoin, 102 AD2d at 364, citing McKinney’s Cons Laws of NY, Book 1, Statutes §§ 73, 74, 422 and 423, suggests a conscious decision to remove any requirement that the Supreme Court can preside over only indicted misdemeanor cases.)

. In fact, the defendant could not be making this motion without the inclusion of such language in the administrative order. CPL 170.30 (1) (b) provides that a motion to dismiss an information is usually to be decided by a local criminal court judge.