OPINION OF THE COURT
Judith Lies, J.
This motion involves a narrow issue of first impression that arises from the transfer on November 8, 2004, and thereafter, of this and most of the other pending misdemeanor cases from the New York City Criminal Court, Bronx County, to the newly formed Criminal Division of the Supreme Court in Bronx County — namely, whether a defendant whose case was so transferred and who stands charged with two class B misdemeanors is entitled to a trial by jury. For the reasons that follow, this court concludes that he is not.
Background
On September 8, 2004, the Honorable Chief Judge Judith Kaye, in consultation with the Administrative Board of the *549 Courts, and with the approval of the New York State Court of Appeals, promulgated a new part 42 of the Rules of the Chief Judge (22 NYCRR). That rule authorized the Chief Administrative Judge of the Courts, in consultation with the Presiding Justice of the First Judicial Department, to establish a Criminal Division of the Supreme Court, Bronx County. On September 21, 2004, the Chief Administrative Judge promulgated a new part 142 of the Rules of the Chief Administrator of the Courts, which established a Criminal Division of the Supreme Court in Bronx County. (22 NYCRR 142.2 [b].) The order of the Chief Administrative Judge provided that every case transferred from the Criminal Court of the City of New York to the Criminal Division of the Supreme Court, Bronx County, was to be adjudicated “subject to the same substantive and procedural law as would have applied to it had it not been transferred.” (22 NYCRR 142.3.) Thereafter, on September 27, 2004, the Administrative Judge of the Criminal Division of the Supreme Court, Bronx County, issued an order giving effect to part 142, by ordering that most of the cases pending on or commenced after November 8, 2004, in the Criminal Court of the City of New York, Bronx County, be transferred to the Criminal Division of the Supreme Court, Bronx County. In that order, the Administrative Judge made a finding that the transfer “will promote the administration of justice in Bronx County.”
On March 11, 2005, the defendant was arraigned in the New York City Criminal Court, Bronx County, and charged with assault in the third degree and criminal mischief in the fourth degree, both class A misdemeanors, and harassment in the second degree, a violation. Later that day, this case was transferred to the Criminal Division of the Supreme Court, Bronx County, in compliance with these orders.
On September 14, 2005, the People moved to reduce the class A misdemeanors charged in this case to class B misdemeanors. Relying on People v Zimmer (51 NY2d 390, 394 [1980]), People v Potter (172 Misc 2d 409, 414 [Crim Ct, Bronx County 1997]), and People v Williams (120 Misc 2d 68, 78-79 [Crim Ct, Bronx County 1983]), this court permitted the reduction, over the defendant’s objection. Accordingly, the defendant now stands charged with attempted assault in the third degree and attempted criminal mischief in the fourth degree, both class B misdemeanors, and harassment in the *550 second degree, a violation. The People have announced their readiness for trial.
The defendant now moves for an order directing that he be tried by a jury. The People object, maintaining that the defendant is not entitled to a jury trial.
The defendant makes six independent contentions in support of his motion:
(1) Because, according to the defendant, the court is sitting as a non-New York City local criminal court for purposes of Criminal Procedure Law § 340.40 (2), the general provision in CPL 340.40 (2), which provides for a jury trial in all misdemeanor cases pending in any local criminal court except New York City Criminal Court, applies in this case and entitles the defendant to a jury trial;[1]
(2) Even if CPL 340.40 (2) does not apply to this case because this court is not sitting as a non-New York City local criminal court, he has a constitutional right to a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution;
(3) Even if CPL 340.40 (2) does not apply to this case because this court is not sitting as a non-New York City local criminal court, he has a right to a jury trial under article I, § 2 and article VI, § 18 of the New York State Constitution;
(4) Even if CPL 340.40 (2) does not apply to this case because this court is not sitting as a non-New York City local criminal court, he has a right to a jury trial under article 2, § 12 of the Civil Rights Law;
(5) Failure to provide the defendant with a jury trial would violate his right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and article I, § 11 of the New York State Constitution; and
(6) Because CPL 340.40 (2) was passed in violation of article IX, § 2 (b) (2) (a) — the home rule provisions — of the New York State Constitution, the defendant is entitled to a jury trial.
*551 Discussion
I. This Court Does Not Sit as a Non-New York City Local Criminal Court and CPL 340.40 (2) Thus Does Not Entitle the Defendant to a Jury Trial
The defendant first argues that the Criminal Division of the Supreme Court, Bronx County, is sitting as a non-New York City local criminal court when it tries misdemeanor cases. CPL 340.40 (2) requires that defendants tried in non-New York City local criminal courts are to be accorded jury trials. Therefore, he contends that he is entitled to a jury trial. Because I conclude that the Criminal Division of the Supreme Court is a “superior court” sitting as such, the defendant’s contention must be rejected.[2]
CPL 10.10 (2) defines “Superior court” as the Supreme Court or County Court. CPL 10.10 (3) defines “local criminal court” so as to exclude Supreme Court.[3] Under the Criminal Procedure Law, instances where a superior court judge, including a Supreme Court Justice, can sit as a local criminal court are discretionary and for limited purposes not relevant here. (See CPL 10.20 [3].)[4] Further, CPL 10.20 (1) (b) provides that superior courts, including the Supreme Court, have “[t]rial jurisdiction of misdemeanors concurrent with that of the local criminal courts.” The term “concurrent with” demonstrates that the Legislature contemplated that multiple courts would
*552 have jurisdiction over misdemeanors, not that the Supreme Court became a local court upon trying misdemeanors.
The New York State Constitution provides that the Supreme Court has unlimited and unqualified jurisdiction to preside over virtually every case, including misdemeanors. (NY Const, art VI, § 7; see, e.g., Nestor v McDowell, 81 NY2d 410 [1993]; Kagen v Kagen, 21 NY2d 532 [1968]; People v Darling, 50 AD2d 1038 [3d Dept 1975]; People v Marrero, 8 Misc 3d 172 [Sup Ct, Bronx County 2005]; People v Gonzalez, 6 Misc 3d 1034[A], 2005 NY Slip Op 50291[U] [Sup Ct, Bronx County 2005]; People v Robinson, 6 Misc 3d 645 [Sup Ct, Bronx County 2004].) This constitutional grant of jurisdiction means that the Supreme Court is a superior court regardless of the level of crime that is the subject of the case it is adjudicating. Nor is there anything in the State Constitution or statute that purports to change the character of the Supreme Court as a superior court when it is trying misdemeanors.
Finally, the orders establishing the Criminal Division of the Supreme Court, Bronx County, and requiring the transfer of most misdemeanor cases from the Criminal Court to the Criminal Division do not transform the Supreme Court into a local criminal court. Instead, the orders are an exercise of authority granted to the court under the New York State Constitution. Section 19 (a) of article VI of the New York State Constitution provides that “[a]s may be provided by law,” and “upon a finding that such a transfer [of cases to the Supreme Court] will promote the administration of justice,” as has been made here, the Supreme Court may transfer to itself any matter pending before any other court within the judicial department, except the Court of Claims. As stated earlier, such a transfer was made by the Supreme Court, Bronx County, by order dated March 11, 2005.
Because the Supreme Court is a superior court, CPL 340.40 (2), which governs proceedings in local criminal courts, does not apply by its terms to the Supreme Court, Criminal Division, and cannot be a predicate for entitlement to a jury trial.
II. The Order of the Chief Administrative Judge, Which Makes CPL 340.40 (2) Applicable to this Case, Requires a Denial of the Defendant’s Motion for a Jury Trial
The Criminal Procedure Law is silent as to whether a defendant who is charged with a misdemeanor and prosecuted by way of a misdemeanor information in Supreme Court is to be tried by a jury or the court. The order of the Chief Administra *553 tive Judge (22 NYCRR 142.3), however, resolves the issue. That order states that, in cases transferred to the Criminal Division, the substantive and procedural law that would have applied had the case been heard in the New York City Criminal Court is the applicable law. CPL 340.40 (2) provides for a bench trial in New York City Criminal Courts whenever, as here, a defendant is charged with a misdemeanor for which the authorized term of imprisonment is not more than six months. As a result, the defendant would have been tried in a bench trial in the New York City Criminal Court had the case not been transferred to this court. Therefore, pursuant to the Chief Administrative Judge’s order, the defendant is not entitled to a trial by jury in the Supreme Court, Criminal Division.
The defendant does not challenge the authority of the Chief Administrative Judge to issue such an order as a general matter, and, indeed, the law would not support such a challenge. Section 28 of article VI of the New York State Constitution authorizes the Chief Judge of the Court of Appeals (and through her, the Chief Administrative Judge) to establish standards and administrative policies for general application throughout the state. (See Corkum v Bartlett, 46 NY2d 424, 429 [1979].) Article 7-A of the Judiciary Law recognizes the broad administrative powers included in that constitutional authority. (See Judiciary Law §§ 211, 212.) Granted, article VI, § 30 of the New York State Constitution provides that the power to regulate procedure in the courts is “principally” the function of the Legislature. (Cohn v Borchard Affiliations, 25 NY2d 237, 247 [1969]; People v Marrero, 8 Misc 3d 172, 175 [Sup Ct, Bronx County 2005].) Nonetheless, article VI, § 30 provides that that section is not intended to prevent rule making by individual courts “consistent with the general practice and procedure as provided by statute or general rules.” What article VI, § 30 means is that a court rule may not “invade recognized rights of person or property.” (People v Ramos, 85 NY2d 678, 687 [1995], quoting McQuigan v Delaware, Lackawanna & W. R.R. Co., 129 NY 50 [1891].)
The order of the Chief Administrative Judge (22 NYCRR 142.3) does not run afoul of article VI, § 30 because it does not affect any rights of the defendant and is consistent with the law. It neither enlarges nor abridges the defendant’s rights, because the defendant will be afforded the same mode of trial, i.e., a bench trial, that he would have received had the case not been transferred from the New York City Criminal Court to this *554 court. Further, as discussed below, there is no constitutional or statutory right to a jury trial for class B misdemeanors prosecuted by information in Supreme Court, and therefore the court order is consistent with the constitutional and statutory framework. Where, as here, the law does not provide a right to a jury trial, the court order cannot be faulted for not granting such right.
In light of the foregoing, I conclude that the order of the Chief Administrative Judge, requiring this court to adjudicate this case subject to the same substantive and procedural law that would have applied had the case not been transferred— including CPL 340.40 (2), which mandates a bench trial — is to be applied in this case.
III. The Defendant is Not Entitled to a Jury Trial under the Sixth and Fourteenth Amendments to the United States Constitution
The defendant argues that the Sixth and Fourteenth Amendments to the United States Constitution provide him with the right to be tried by a jury and therefore the order of the Chief Administrative Judge is unconstitutional in this context. I disagree.
The Sixth Amendment to the United States Constitution provides: “In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . .’’As the defendant concedes, the Sixth Amendment’s guarantee of the right to a jury trial applies only to “serious crimes” and not to “petty offenses.” (Lewis v United States, 518 US 322 [1996]; Blanton v North Las Vegas, 489 US 538 [1989]; Frank v United States, 395 US 147 [1969]; Duncan v Louisiana, 391 US 145 [1968].) The defendant argues, however, that CPL 340.40 (2) (as applied in this case through the order of the Chief Administrative Judge) is unconstitutional in that it hinges the determination as to whether an offense is serious solely on the maximum penalty for the offense and does not permit the consideration of other criteria. The defendant’s argument is foreclosed by decisions of the United States Supreme Court and our Court of Appeals.
In numerous cases, the United States Supreme Court has held that the “primary” consideration in deciding whether a defendant is entitled to a trial by jury is the maximum authorized period of incarceration. If the maximum authorized sentence is six months or less, the offense will almost certainly be deemed *555 petty. (See, e.g., Blanton v North Las Vegas, supra, 489 US at 542-543; Codispoti v Pennsylvania, 418 US 506, 512 [1974]; Baldwin v New York, 399 US 66, 70-71 [1970]; Duncan v Lousiana, supra, 391 US at 159.)
In Lewis v United States (518 US 322 [1996], supra), for example, the Supreme Court concluded that a defendant who was prosecuted in a single proceeding for multiple offenses that individually have a maximum sentence of six months or less, but an aggregate maximum sentence of more than six months, was not constitutionally entitled to a jury trial. In so ruling, the Court reiterated its earlier holdings that the “primary” determinant of whether a defendant is entitled to a jury trial is the maximum sentence he or she faces. The Court wrote:
“[T]o determine whether an offense is petty, we consider the maximum penalty attached to the offense. This criterion is considered the most relevant with which to assess the character of an offense, because it reveals the legislature’s judgment about the offense’s severity ... In evaluating the seriousness of the offense, we place primary emphasis on the maximum prison term authorized. While penalties such as probation or a fine may infringe on a defendant’s freedom, the deprivation of liberty imposed by imprisonment makes that penalty the best indicator of whether the legislature considered an offense to be ‘petty’ or ‘serious.’ An offense carrying a maximum prison term of six months or less is presumed petty, unless the legislature has authorized additional statutory penalties so severe as to indicate that the legislature considered the offense serious.” (Lewis, 518 US at 326.)
The defendant argues that the Supreme Court has not squarely held that the maximum length of imprisonment is the sole criterion for determining the right to a jury trial, and that therefore even if the maximum length of imprisonment facing the defendant is six months or less, the court should consider other factors to determine whether the offense is “serious.” Although there are some older cases in other jurisdictions that may support the defendant’s argument, it cannot be sustained in light of the decisions by the New York Court of Appeals, which establish a bright-line test under which a crime is “petty” if the maximum authorized term of imprisonment is six months or less. Thus, in Matter of Morgenthau v Erlbaum (59 NY2d 143 [1983]), our Court of Appeals, in concluding that CPL 340.40 *556 (2) did not violate the Sixth and Fourteenth Amendments with respect to a trial adjudicating a prostitution charge, held that there was a “ ‘fixed dividing line between petty and serious offenses: those crimes carrying a sentence of more than six months are serious crimes and those carrying a sentence of six months or less are petty crimes.’ ” (Erlbaum, 59 NY2d at 154, quoting Codispoti v Pennsylvania, supra, 418 US at 512.) In so holding, the Court noted that, without such an objective test, “persons charged with identical offenses would find that their right to a jury depended only on the Judge before whom they happened to appear, not on the offense charged.” (Id.)
More recently, in People v Foy (88 NY2d 742 [1996]), our Court of Appeals, in concluding (like Lewis) that a defendant was not entitled to a jury trial if he or she was charged with offenses for which the maximum authorized term of imprisonment did not exceed six months individually, but the aggregate maximum terms of imprisonment exceeded six months, reiterated that the test was a bright-line standard. The Court stated:
“It is well settled that offenses carrying a maximum statutory term of imprisonment of greater than six months are ‘serious’ offenses for which the New York and United States Constitutions unquestionably afford defendants the right to a jury trial. Equally settled is the proposition that offenses carrying sentences of less than six months are ‘petty’ offenses, to which no right to a jury trial attaches.” (Foy, 88 NY2d at 745 [citations omitted].)
The Court went on to write that “petty” offenses were “defined as those carrying maximum statutory prison terms of less than six months.” (Id. at 746.)
In this case, the defendant stands charged with attempted assault in the third degree and attempted criminal mischief in the fourth degree, class B misdemeanors, as well as harassment in the second degree, a violation. The class B misdemeanors carry a maximum penalty of three months’ incarceration (Penal Law § 70.15) and a fine not exceeding $500 (Penal Law § 80.05 [2]). Under the bright-line test, the defendant is not entitled to a trial by jury, as the maximum authorized term of imprisonment is six months or less. Even if one considers the fact that the defendant faces a fine as well as imprisonment, that added penalty is not so grave as to elevate the offenses to the “serious” category. Indeed, these are the very offenses with which Foy was *557 charged and that were deemed “petty” by our Court of Appeals.[5]
IV The Defendant is Not Entitled to a Jury Trial under Article I, § 2 and Article VI, § 18 of the New York State Constitution
The defendant further argues that he is entitled to a jury trial under article I, § 2 and article VI, § 18 of the New York State Constitution and that therefore the order of the Chief Administrative Judge is unconstitutional in this context. This argument is without merit.
Article I, § 2 provides: “Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever . . . .” As discussed above, the Court of Appeals held in Foy that a defendant is not entitled to a trial by jury if the maximum authorized term of imprisonment for the charged offense is six months or less. Foy was analyzed and decided under both the United States Constitution and article I, § 2 of the New York State Constitution. Accordingly, article I, § 2 does not require a trial by jury in this case.
The defendant further argues that he is entitled to a trial by jury under article VI, § 18 (a) of the New York State Constitution. That section provides:
“Trial by jury is guaranteed as provided in article one of this constitution. The legislature may provide that in any court of original jurisdiction a jury shall be composed of six or of twelve persons and may authorize any court which shall have jurisdiction over crimes and other violations of law, other than crimes prosecuted by indictment, to try such matters without a jury, provided, however, that crimes prosecuted by indictment shall be tried by a jury composed of twelve persons, unless a jury trial has been waived as provided in section two of article one of this constitution.”
*558 He contends that absent legislative action to dispense with a jury trial, article VI, § 18 (a) confers such a right. Article VI, § 18 (a), however, is not a provision that grants the right of a jury trial to a criminal defendant. To the contrary, article VI, § 18 (a) specifically provides that the extent of a defendant’s right to a jury trial is governed by article I, § 2 of the Constitution. As discussed above, article I, § 2 mandates a trial by jury only for “serious” crimes, not for “petty” offenses as charged in this case.
Article VI, which is entitled “Judiciary,” as a whole establishes the components of a unified court system for the state. (See article VI, § 1.) Article VI, § 18 (a) merely authorizes the Legislature to withhold the right to a jury trial in certain circumstances (provided it does not run afoul of a constitutional provision), but section 18 (a) does not independently confer a right to a jury trial in the absence of some other constitutional or statutory grant of such a right.
In sum, the defendant’s suggestion that article VI, § 18 guarantees the right to a jury trial for a petty offense is belied by the plain language of its first sentence.
V The Defendant is Not Entitled to a Jury Trial under Article 2, § 12 of the Civil Rights Law
The court also overrules the defendant’s contention that he is guaranteed a jury trial under article 2, § 12 of our State’s Civil Rights Law, which provides in relevant part, that “[i]n all criminal prosecutions, the accused has a right to a speedy and public trial, by an impartial jury.” In New York State, the provisions of the Bill of Rights of the United States Constitution are embodied in the Civil Rights Law. (People ex rel. Darling v Warden, 154 App Div 413, 421 [1st Dept 1913].) Specifically, section 12 of the Civil Rights Law duplicates the Sixth Amendment to the United States Constitution. (See Matter of United Press Assns. v Valente, 281 App Div 395, 399 [1st Dept 1953], affd 308 NY 71 [1954]; see also Revisers’ Report on Revised Statutes of New York [1829 ed].)
Simply put, section 12 of the Civil Rights Law affords defendants in criminal trials the same rights as they are afforded under the Sixth Amendment to the United States Constitution. As noted above, the Sixth Amendment does not guarantee the defendant a jury trial in this case, because the defendant is only charged with “petty” offenses. Accordingly, section 12 of the Civil Rights Law likewise does not require a jury trial in this case.
*559 VI. The Defendant Will Not be Denied Equal Protection of the Laws as Guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, § 11 of the New York State Constitution if Tried by the Court
The defendant, who is African-American, also claims that he will be denied equal protection of the laws as guaranteed by the United States and New York State constitutions if denied a jury trial. He argues that he lacks equal protection because defendants charged with “petty” offenses in New York City — which, according to the defendant, has a large minority and foreign-born population — receive a trial by a single judge, whereas defendants charged with “petty” offenses outside of New York City receive a jury trial. The defendant’s argument is without merit.
In order to show a violation of the Equal Protection Clause under the United States Constitution on account of a person’s race, the claimant must demonstrate that the government acted with a discriminatory purpose.[6] (Washington v Davis, 426 US 229, 239 [1976].) A law does not violate the Equal Protection Clause merely because it has a disproportionate impact on a particular racial group. (Id.; see also Arlington Heights v Metropolitan Housing Development Corp., 429 US 252, 264-265 [1977].) “ ‘Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious discrimination.’ Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.” (Arlington Heights v Metropolitan Housing Development Corp., 429 US at 265 [internal citations omitted].)
The defendant contends that statistics showing that a higher percentage of minorities reside in New York City than in other areas of the state prove that the denial of jury trials to defendants in New York City charged with petty crimes while affording jury trials outside of New York City for such crimes is discriminatory under the Equal Protection Clause of the Fourteenth Amendment. This court is unaware of any appellate authority that addresses this contention. However, the defendant’s argument is similar to that made by the defendant in People v Carroll (136 Misc 2d 589 [Syracuse City Ct 1987]), which was rejected by that court. In Carroll, the defendant had *560 argued: (1) that the legislators were aware of the potential disproportionate impact of CPL 340.40 (2) on African-Americans, but nevertheless enacted the statute; (2) that there were higher acquittal rates in jury trials than in bench trials; and (3) that there was no evidentiary support for the proposition that the statute had been enacted based on a serious court backlog of misdemeanor cases. (Carroll at 593.) In rejecting those arguments, the court acknowledged that the statute had a greater impact on African-Americans than other people. Nonetheless, the court concluded that nothing presented to it required any conclusion but that the statute was designed to accommodate a heavy case load in large metropolitan areas.[7] The court noted, “The court congestion problem is not a novel or fictitious one, having been cited frequently by the Office of Court Administration as a major cause of the ills that afflict our judicial system.” (Id. at 594.) Accordingly, the Carroll court found that the respondents had failed to meet “their burden of proving that discriminatory purpose was a motivating factor.” (Id.)
The defendant in this case has proffered nothing from which this court may conclude anything other than the conclusion reached by the Carroll court — that requiring bench trials for defendants in New York City charged with petty crimes is not the result of an intent to discriminate against minorities or foreign-born residents, but instead represents an effort to accommodate the unusually heavy demands of the New York City criminal justice system. Indeed, it has been recognized as early as the early nineteenth century that problems faced by courts and litigants in courts in New York City are different from those in other parts of the state. At that time, a commission was established to organize and codify New York State statutes. In 1828, the Commissioners recommended that minor offenses be tried in the Court of Special Session in New York City without a jury because the jails in New York City were overcrowded with people awaiting trial. “The consequence has been . . . [by] waiting for the trial; that the guilty thus escape punishment; and that the innocent, or those comparatively innocent, are, from their association with criminals of every hue, hardened in crime, *561 and rendered infinitely more dangerous to community.” (See Report of Commissioners Appointed to Revise Statute Laws of State, Oct. 15, 1828 [Crosswell and Van Benthusen, Albany 1828].) The Commissioners stated: “It is conceived that this principle should be applied to the [C]ity of New York, whatever may be its application in other counties. The reasons of public policy, and the necessity of the provision to avoid the evils already enumerated, decidedly outweigh other considerations.” (Id.)
The concerns raised by the Commissioners in 1828 were still present over 140 years later. In Matter of Hogan v Rosenberg (24 NY2d 207 [1969], revd on other grounds sub nom. Baldwin v New York, 399 US 66 [1970]), the Court of Appeals held that CPL 340.40 (2) did not violate the Equal Protection Clause by mandating bench trials for petty offenses tried in New York City and jury trials for petty offenses tried elsewhere in the state. That holding related only to the geographic distinction, and did not involve a claim based on race, as is made here. Nonetheless, in so holding, the Court relied on the stated need to address the backlog of petty offense cases in New York City— given the tremendous volume of such cases — by eliminating jury trials. Fourteen years later, in Matter of Morgenthau v Erlbaum (59 NY2d 143 [1983]), the Court of Appeals cited the same concern with backlog in upholding the constitutionality of CPL 340.40 (2) in the face of a Sixth Amendment claim. Again, the Court pointed out that the availability of jury trials in New York City would overwhelm the courts and prosecutors by consuming large amounts of time. (Id. at 152-153.) These concerns continue to be present today.
In light of the foregoing, this court rejects the defendant’s Equal Protection claim under the Federal Constitution.
The defendant fares no better under the State Constitution. Article I, § 11 provides as follows:
“No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.”
With respect to the first sentence of section 11, the Court of Appeals has held that the sentence is “obviously an equal protection clause” and “is no more broad in coverage than its Federal *562 prototype.” (Dorsey v Stuyvesant Town Corp., 299 NY 512, 530 [1949].) Since the decision in Dorsey, our Court of Appeals has reiterated that the guarantee of equal protection under the New York Constitution is coextensive with that of the Federal Constitution. (See People v Kern, 75 NY2d 638, 653 [1990]; Matter of Esler v Walters, 56 NY2d 306, 313-314 [1982].) Thus, this court’s conclusion is the same under the State Constitution as under the Federal Constitution — the defendant’s equal protection rights are not violated if he is not afforded a jury trial.
Our Court of Appeals has held that the second sentence of section 11, although prohibiting discrimination in civil rights, does not grant any independent rights, but is dependent upon some other provision of the Constitution or a statute. That sentence merely “state[s] a general principle recognizing other provisions in the Constitution, the existing Civil Rights Law or statutes to be later enacted.” (Brown v State of New York, 89 NY2d 172, 190 [1996]; see also Dorsey v Stuyvesant Town, supra, 299 NY at 531.) As discussed above, the State Constitution and the Civil Rights Law do not require a jury trial for petty offenses. Nor is this court aware of any other state constitutional or statutory provision that so requires. As a result, the second sentence of section 11 does not require that a jury trial be held in this case.
VII. The Home Rule Provisions of the New York State Constitution Do Not Require a Jury Trial in this Case
Finally, the defendant argues that CPL 340.40 (2) was passed by the Legislature in violation of article IX, § 2 (b) (2) (a) — the home rule provisions — of the New York State Constitution and as a result he is somehow entitled to a jury trial. This section provides:
“Subject to the bill of rights of local governments and other applicable provisions of this constitution, the legislature: . . .
“(2) Shall have the power to act in relation to the property, affairs or government of any local government only ... (a) on request of two-thirds of the total membership of its legislative body or on request of its chief executive officer concurred in by a body of such membership.” (NY Const, art IX, § 2 [b] [2] [a].)
The defendant argues that the Legislature passed CPL 340.40 (2) without any “home rule message” from either the City Counsel or the Mayor of New York City and thereby violated the home rule provisions of the Constitution.
*563 As a preliminary matter, it must be noted that CPL 340.40 (2) does not apply in this case by virtue of legislative action, but rather has been made applicable through judicial order. Therefore, the home rule provisions, which only serve to restrict legislative action, are not applicable here. But even if the home rule provisions were applicable to judicial action, the defendant’s argument would be without merit.
The home rule provisions set forth in article IX of the New York State Constitution were adopted based on a “recognition that essentially local problems should be dealt with locally and that effective local self-government is the desired objective.” (Matter of Kelley v McGee, 57 NY2d 522, 535 [1982].) The home rule provisions do not prevent the Legislature from acting upon matters of statewide concern. (Id. at 537.) In determining whether a challenged statute involves a matter of statewide concern — and therefore a matter not covered by the home rule provisions — the Court of Appeals has looked to whether “the subject matter of the statute is of sufficient importance to the State generally to render it a proper subject of State legislation.” (Id. at 538.) Thus, in McGee, the Court determined that the Legislature could raise the salaries of District Attorneys in Clinton, Dutchess, and Ontario counties without the request of local authorities. In reaching this conclusion, the Court held:
“It is obvious that the office of District Attorney, having as its responsibility the enforcement, on a local level, of the penal laws of this State and the representation of the people of this State in criminal matters arising within the county, is a matter of concern to the State.” {Id. at 539.)
Similarly, here, CPL 340.40 (2) involves a statewide matter. The court system is charged with expeditiously adjudicating criminal matters involving alleged violations of the penal laws of the state, as prosecuted by a representative of the People of the State. Under the standard set forth in McGee, CPL 340.40 (2) is not covered by the home rule provisions.
In light of the foregoing, the defendant’s motion for a jury trial is denied.

. CPL 340.40 (2) provides:
“In any local criminal court a defendant who has entered a plea of not guilty to an information which charges a misdemeanor must be accorded a jury trial . . . except that in the New York city criminal court the trial of an information which charges a misdemeanor for which the authorized term of imprisonment is not more than six months must be a single judge trial.”

. The basis for the defendant’s contention that the Bronx Supreme Court is a non-New York City court has not been made clear.

. CPL 10.10 (3) provides:
“ ‘Local criminal court’ means:
“(a) A district court; or
“(b) The New York City criminal court; or
“(c) A city court; or
“(d) A town court; or
“(e) A village court; or
“(f) A supreme court justice sitting as a local criminal court; or
“(g) A county judge sitting as a local criminal court.”
As discussed herein, CPL 10.10 (f) relates only to limited functions: conducting arraignments, issuing arrest warrants, and issuing search warrants. (See CPL 10.20 [3].)

. CPL 10.20 (3) provides:
“Superior court judges may, in their discretion, sit as local criminal courts for the following purposes:
“(a) conducting arraignments . . . ;
“(b) issuing warrants of arrest. . . ; and
“(c) issuing search warrants.”
On such occasions, the judge, not the court, serves as a local criminal court.

. The defendant further argues, without discussion, that the decisions of the United States Supreme Court in Apprendi v New Jersey (530 US 466 [2000]) and United States v Booker (125 S Ct 738 [2005]) suggest that the law cited above is no longer correct and that there is a right to a trial by jury in all misdemeanor cases. While those cases considered the right to a jury trial, they are distinguishable. In Apprendi, the Court held that a factual determination authorizing an increase in the maximum prison sentence from 10 to 20 years needed to be made by a jury. In Booker, the Court held that a factual determination under the federal guidelines that resulted in an increased sentence of eight years (for one defendant) and 10 years (for another defendant) could not be made by a sentencing judge. These cases do not consider the role of a jury with respect to “petty” offenses.

. The defendant challenges the action of the Legislature in passing CPL 340.40 (2), not the order of the Chief Administrative Judge to apply substantive and procedural law — including CPL 340.40 (2) — in the Bronx Criminal Division that would have applied had the case not been transferred.

. At the time of the Carroll decision, CPL 340.40 (2) directed that defendants in courts in municipalities with a population of 150,000 or more be accorded bench trials for petty offenses. The statute was subsequently amended to accord bench trials for petty offenses to defendants in courts in New York City only.