■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DESIRIE WILSON, Appellant. [872 NYS2d 124]—

Judgment, Criminal Division of Supreme Court, Bronx County (Michael A. Gross, J.), rendered September 8, 2004, convicting defendant, after a nonjury trial, of attempted aggravated harassment in the second degree, and sentencing her to a conditional discharge for a period of one year, affirmed.

The accusatory instrument was facially sufficient. Furthermore, the verdict was based on legally sufficient evidence and was not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]). The complainant's daughter and defendant's daughter were involved in an altercation outside their high school. Defendant was a school safety officer assigned to the school. Defendant testified that, at the direction of the school's assistant principal for security, she placed a telephone call to the complainant the day after the incident. She stated that she asked the complainant to come to the school with her daughter to participate in a mediation with defendant's daughter. Defendant claimed that she made the call strictly in her official capacity. The complainant testified that defendant did call her, but stated to her "If [you] cared about [your] daughter's well-being, about [your] daughter's safety, you [will] drop the charges." Although defendant denied making the statement, there is no basis for disturbing the court's determinations concerning credibility.

Defendant's statement constituted a threat that satisfied the aggravated harassment statute because it specifically referred to placing the safety of the complainant's daughter in jeopardy (*see People v Tiffany*, 186 Misc 2d 917, 920-921 [Crim Ct, NY County 2001]). Indeed, defendant had a motive for making the threat. She acknowledged that her daughter "had something to lose" if the complainant pressed criminal charges, since defendant's daughter had a disciplinary record at the school. Additionally, the threat was credible because defendant, in her capacity as a school safety officer, was in a position to jeopardize the well-being of complainant's daughter. Accordingly, the statement can only reasonably be interpreted as presenting a "clear and present danger of some serious substantive evil," sufficient for criminal liability to attach (*see People v Dietze*, 75 NY2d 47, 51 [1989]).

The dissent's focus on the fact that defendant was directed to make the call by a superior is misplaced, as that fact is without legal import. It appears from the record that defendant simply disregarded the purpose for which she was asked to make the phone call and took the opportunity to threaten the complainant. Similarly irrelevant is the dissent's observation that defendant "deals with thousands of teenagers." Obviously, this situation was unique insofar as defendant's own daughter was involved.

Also unpersuasive is the dissent's position that the statement made in the telephone call is susceptible to more benign interpretations. Tellingly, the dissent does not offer any alternative constructions of the statement. Indeed, the statement cannot possibly be construed as anything other than a threat to the complainant.

Finally, we perceive no basis for modifying the sentence. In fact, defendant actually seeks an adjournment in contemplation of dismissal, and there is no basis for such relief. Concur—Lippman, P.J., Mazzarelli and Sweeny, JJ.

DeGrasse and Freedman, JJ., dissent in a memorandum by Freedman, J., as follows: I respectfully dissent and would reverse the conviction based on the insufficiency of the evidence. The facts of this case, even when viewed in the light most favorable to the People, are insufficient to warrant a conviction of attempted aggravated harassment in the second degree because it is impossible to glean, from the language allegedly used, any intent to harass, annoy, threaten or alarm.

Defendant, was a school safety agent at DeWitt Clinton High School, a position that she had held for eight years. Her daughter, Ebony J., together with two other girls, was involved in an

altercation with another girl, Laura C., known as "Jasmine." That same afternoon, Jasmine called her mother, Maria D., who came to school, and Jasmine pointed defendant out to her mother, indicating that defendant's daughter was one of the girls involved. Jasmine attempted to speak with defendant, but the latter was called away. The following morning, the assistant principal in charge of security at the school, Stan Dubin, directed defendant to call Jasmine's mother for the purpose of setting up a mediation process and furnished her with Ms. D.'s telephone number. Ms. D. testified that when defendant called, she identified herself as Ebony's mother and started out by saying "she understood what I was going through because my daughter [was] assaulted," and that she also "stated that if I cared about my daughter's well-being, about my daughter's safety, I would drop the charges." Ms. D. testified that she felt threatened by those words, but acknowledged that defendant urged her to come to school and that she and Ebony would be there. When Ms. D. went to the school to meet with the assistant principal, one of the other girls, defendant and Ebony were there as promised. The girls had apparently been arrested but the District Attorney declined to press charges against the girls. Ms. D. then went to the police station and reported that she had received a harassing telephone call from defendant. When defendant was arrested, she stated to the arresting officer, Detective Peter Simon, "I only made a phone call." Detective Simon, who did not know that the assistant principal had instigated the telephone call, acknowledged that when he arrested her he may have told her that she was being charged with the felony of witness tampering and that he told her that they had a tape recording or her making a threat. There was no such recording.

Stan Dubin testified that he had directed or asked defendant, whom he had known for four years, to make the telephone call to urge Ms. D. and Jasmine to participate in mediation because defendant had effectively mediated many disputes at the school and was "a wonderful safety school agent." He testified that "She'[d] handled dozens upon dozens of difficult cases involving fights, disputes, everything under the sun from a disciplinary point of view; . . . most of the cases she's been involved with, she's taken an interest in and reached good settlement with almost all of them as far as the parties are involved." He also testified that contacting parents was part of her responsibilities and that no improprieties had ever been reported to him. Dwayne White, defendant's supervisor at DeWitt Clinton for six years, and a level three member of the New York Police Department, Safety Division, testified that defendant, with whom he had daily contact, was very professional, very accurate and at-

tentive to details and that he had never received any complaint about her. He also stated that the students found her very trustworthy and respected her. He was familiar with the incident, and had actually diverted Jasmine when she had tried to approach defendant.

Defendant had been charged with "attempted" violations of subdivisions (1) and (2) of Penal Law § 240.30 which state that

"[a] person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she:

"1. Either (a) communicates with a person, anonymously or otherwise, by telephone . . . or by transmitting or delivering any other form of written communication, in a manner likely to cause annoyance or alarm; or . . .

"2. Makes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication."

The Court, after a nonjury trial, found defendant guilty of subdivision (1) but not (2) and sentenced her to a conditional discharge.

Thus, the issue is whether the record supports a conviction of attempted aggravated harassment in the second degree by virtue of a communication made in a manner likely to cause annoyance or alarm. It is conceded that the single telephone call at issue was initiated at the instigation of the assistant principal for the purpose of encouraging the complaining witness and her daughter to participate in a mediation program rather than to proceed with criminal charges. Stan Dubin had been an assistant principal for 25 years and had been in charge of safety at DeWitt Clinton for at least four years. Presumably, he had some expertise in security maintenance although he conceded that he exercised poor judgment in directing defendant to make this particular call.

Since there can be no doubt that the single communication at issue was initiated for a benign purpose and at the behest of the assistant principal, the court would have had to find that somewhere in the middle of the conversation, defendant decided to threaten, harass, alarm or annoy, or attempt to commit such acts. Assuming as we must that during the course of a telephone conversation that Ms. D. testified occurred at about 10:15 or 10:45 A.M., but based on school log records occurred at about 8:10 A.M., defendant said something to the effect that if Ms. D. was concerned about her daughter's safety, she should not press charges. That one statement in the context of a single telephone call from a security officer who deals with thousands of teenag-

ers and has been directed to offer a mediation alternative to a parent, does not rise to the level of a communication that is intended to harass, annoy, threaten or alarm another person.

In dealing with the predecessor statute Penal Law § 240.25 (2), the Court of Appeals in *People v Dietze* (75 NY2d 47 [1989]), dismissed a case in which a defendant told another that she would "beat the crap out of [the victim] some day or night on the street" (*id.* at 50). The Court held that the statement was constitutionally protected speech because it did not present "a clear and present danger of some serious substantive evil" (*id.* at 51). In that case the Court found that the vulgar outburst did not constitute such a threat. Similarly, in *People v Silverberg* (1 Misc 3d 62 [App Term, 1st Dept 2003]), the majority reversed a conviction of aggravated harassment, holding that a single telephone call by a defendant to a lawyer, who would be a likely witness in a criminal proceeding stemming from the arrest of the defendant's former girlfriend, in which the defendant stated that he had "two letters written to the grievance committee . . . and that [he could] have [the complainant] arrested based on two witnesses that said that [the complainant] assaulted [defendant] in Southampton" (*id.* at 63 [internal quotation marks omitted]), did not amount to an unequivocal threat.

Similarly, the statement allegedly made here is subject to more than one interpretation. Under the surrounding circumstances, it is neither an unequivocal threat nor does it present a clear and present danger. This is particularly true because defendant was specifically directed to recommend a mediation alternative, and because in a school with 4,500 students, it is undoubtedly difficult to assure the safety of any particular student.

For those reasons, I would reverse the conviction.