■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDGAR CORREA, Appellant. [897 NYS2d 14]—

Judgment, Criminal Division of the Supreme Court, Bronx County (Robert G. Seewald, J.), rendered September 27, 2006, convicting defendant, after a nonjury trial, of harassment in the second degree, and sentencing him to a term of 15 days, reversed, on the law, and the misdemeanor information dismissed.

On September 8, 2004, citing New York State Constitution, article VI, § 28 (c) and section 211 (1) (a) of the Judiciary Law as the source of her authority, Chief Judge Kaye promulgated Rules of the Chief Judge (22 NYCRR) part 42, which authorized the Chief Administrator of the Courts, in consultation and agreement with the Presiding Justice of the First Judicial Department, to establish the Criminal Division of the Supreme Court in Bronx County (BCD) and to provide for

the transfer thereto of "some or all classes of cases pending in the Criminal Court of the City of New York in Bronx County in which at least one felony or misdemeanor is charged therein" (22 NYCRR 42.1 [b], [c]).

The avowed purpose of part 42 was "to promote the administration of justice in the criminal courts in Bronx County by authorizing deployment of the judges of those courts in a manner that assures that all present and future caseload demands in such county will be met as expeditiously and effectively as possible" (22 NYCRR 42.1 [a]).

On September 21, 2004, the Chief Administrative Judge, purporting to act pursuant to "the authority vested in [him] and upon consultation with the Administrative Board of the Courts," promulgated Rules of the Chief Administrator of the Courts (22 NYCRR) part 142, which established the BCD, to which *all* pending and future Bronx County criminal cases charging at least one class A misdemeanor or a felony, not resolved at arraignment, would be transferred for further proceedings (22 NYCRR 142.1, 142.2). On September 27, 2004, the Administrative Judge of Bronx County issued an order putting the transfer order into effect as of November 5, 2004. The Bronx Administrative Judge's order purports to have been issued "pursuant to the authority vested . . . by article VI, § 19 (a) of the State Constitution and pursuant to direction of the Chief Administrative Judge of the Courts as provided in section 142.2 (b) . . . and further, upon finding that it will promote the administration of justice in Bronx County for selected components of the criminal caseload of its courts."

These directives effectively merged the New York City Criminal Court in the Bronx with the State Supreme Court in the Bronx, creating a single consolidated criminal trial court for all cases charging at least one class A misdemeanor or a felony.

On October 1, 2005, defendant Edgar Correa's case was transferred to the newly formed BCD. Correa had been charged by information in the Bronx Criminal Court with assault in the third degree (Penal Law § 120.00 [1]), menacing in the second degree (Penal Law § 120.14 [1]), and criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [2]), all class A misdemeanors, and with harassment in the second degree (Penal Law § 240.26 [1]), a violation.[1] Defendant was convicted of harassment in the second degree and this appeal followed. By

---

1. A superseding information in the BCD charged defendant with an additional class A misdemeanor and violation.

letter of the Clerk of the Court dated February 22, 2009, this Court asked for additional briefing, in this and two other appeals, on the following issues, which do not have to be preserved for appellate review (*see People v Patterson*, 39 NY2d 288, 295 [1976]; *People v Harper*, 37 NY2d 96, 99 [1975]): (1) whether the establishment of the BCD under part 142 of the Rules of the Chief Administrator of the Courts is consistent with the Constitution and statutes of the State of New York; and (2) whether the Supreme Court possesses jurisdiction over a criminal case absent the filing of an indictment or superior court information as specified in CPL 210.05.

Although parts 42 and 142 and the Bronx Administrative Judge's order, which established the BCD and put the transfer order into effect, recite that they are promulgated pursuant to the authority granted by article VI, § 28 (c) and § 19 (a) of the State Constitution, and section 211 (1) (a) of the Judiciary Law, numerous other provisions of the State Constitution, Judiciary Law and Criminal Procedure Law relating to the structure of the Unified Court System and the authority of the Chief Judge, Chief Administrator and Legislature to regulate the courts must be considered in determining these issues. As discussed below, an analysis of these provisions leads to the conclusion that in transferring all cases charging a class A misdemeanor to the newly created BCD, causing a collapse of the constitutionally created Criminal Court of the City of New York in the Bronx, the Chief Judge and Chief Administrator overstepped the bounds of the administrative and operational authority they possess under State Constitution, article VI, § 28 and § 19 (a), and Judiciary Law §§ 211 and 212, and impinged on the Legislature's reserved primary power to alter and regulate jurisdiction, practice and procedure under State Constitution, article VI, § 30.

Consequently, we now hold that the establishment of the BCD by administrative decree, which eviscerates the Bronx Criminal Court by depriving it of its jurisdiction over class A misdemeanors and effectively restructures the constitutionally created Unified Court System, is not justifiable under the State Constitution, the Criminal Procedure Law, the Judiciary Law or any of the statutes or rules governing the administrative powers of the Chief Judge of the State of New York and Chief Administrator of the Courts.

By constitutional amendment, State Constitution, article VI, effective September 1, 1962, vested judicial authority of the State in a unified court system (NY Const, art VI, § 1). Pursuant to article III, § 1, "[t]he legislative power of this state shall

be vested in the senate and assembly," which traditionally requires "that the Legislature make the critical policy decisions" (*Bourquin v Cuomo*, 85 NY2d 781, 784 [1995]).

State Constitution, article VI, § 6 (d) continued the Supreme Court, with article VI, § 7 (a) providing, in pertinent part, that the Supreme Court "shall have general original jurisdiction in law and equity" and, in the City of New York, "exclusive jurisdiction over crimes prosecuted by indictment, provided, however, that the legislature may grant to the city-wide court of criminal jurisdiction of the city of New York jurisdiction over misdemeanors prosecuted by indictment." State Constitution, article VI, § 15 (a) directs that the "legislature shall by law establish . . . a single court of city-wide criminal jurisdiction in and for the city of New York."

Section 15 (c) provides that the court of city-wide criminal jurisdiction shall have "jurisdiction over crimes and other violations of law, other than those prosecuted by indictment, provided, however, that the legislature may grant to said court jurisdiction over misdemeanors prosecuted by indictment; and over such other actions and proceedings, not within the exclusive jurisdiction of the supreme court, as may be provided by law" (NY Const, art VI, § 15 [c]). Section 15 (d) provides that the "provisions of this section shall in no way limit or impair the jurisdiction of the supreme court as set forth in section seven of this article" (NY Const, art VI, § 15 [d]).

Pursuant to this constitutional mandate, effective September 1, 1962, the former Court of Special Sessions was abolished and the New York City Criminal Court, of which the Bronx Criminal Court is a part, was created.

It is the dissent's position that the authority of the Chief Judge and Chief Administrator to transfer *all* cases charging a class A misdemeanor from the Bronx Criminal Court to the BCD is expressly provided by article VI, § 28 of the State Constitution and section 211 (1) (a) and section 212 of the Judiciary Law. The dissent contends that this complete transfer power does not run afoul of State Constitution, article VI, § 30, does not require legislative consent, cannot be defeated by statute and is free of the strictures that apply when individual court transfers occur under article VI, § 19 of the State Constitution.

This position cannot withstand scrutiny.

Under the 1962 state constitutional reorganization, the general supervisory powers formerly granted to individual courts passed to the Administrative Board of the Judicial Conference (NY Const, art VI, § 28; *see Matter of Bowne v County of Nassau*, 37 NY2d 75, 79 [1975]), composed of the Chief Judge of the

Court of Appeals and the Presiding Justice of each of the Appellate Division Departments. Effective in 1978, the State Constitution was again amended to vest in the Chief Judge the general supervisory powers formerly exercised by the Administrative Board and to create the position of Chief Administrator of the Courts, to be appointed by the Chief Judge, with the advice and consent of the Administrative Board (NY Const, art VI, § 28 [a]).

Under article VI, § 28 (c), the Chief Judge, after consultation with the Administrative Board, is empowered to "establish standards and administrative policies *for general application throughout the state*, which shall be submitted by the chief judge to the court of appeals, together with the recommendations, if any, of the administrative board. Such standards and administrative policies shall be promulgated after approval by the court of appeals" (NY Const, art VI, § 28 [c] [emphasis added]).[2] Pursuant to Judiciary Law § 211 (1), this power includes, but is not limited to, standards and administrative policies relating to, among other things, (a) "the . . . transfer of judges and causes among the courts of the unified court system," and (b) "[t]he adoption . . . and implementation of rules and orders regulating practice and procedure in the courts, subject to the reserved power of the legislature provided for in section thirty of article six of the constitution."

State Constitution, article VI, § 30 provides that "[t]he legislature shall have the same power to alter and regulate the jurisdiction and proceedings in law and in equity that it has heretofore exercised. The legislature may, on such terms as it shall provide and subject to subsequent modification, delegate, in whole or in part, to a court, including the appellate division of the supreme court, or to the chief administrator of the courts, any power possessed by the legislature to regulate practice and procedure in the courts. The chief administrator of the courts shall exercise any such power delegated to him or her with the advice and consent of the administrative board of the courts. Nothing herein contained shall prevent the adoption of regulations by individual courts consistent with the general practice and procedure as provided by statute or general rules."

Pursuant to State Constitution, article VI, § 28 (b), the Chief Administrator, on behalf of the Chief Judge, is empowered to "supervise the administration and operation of the unified court

---

**2.** One may note that part 142 of the Rules of the Chief Administrator of the Courts is limited to procedure in Bronx County and does not "establish standards and administrative policies for general application throughout the state."

system. In the exercise of such responsibility, the chief administrator of the courts shall have such powers and duties as may be delegated to him or her by the chief judge and such additional powers and duties as may be provided by law." Judiciary Law § 212 (1) (c) vests the Chief Administrative Judge with the power to fix "terms and parts of court . . . and make necessary rules therefor." Judiciary Law § 212 (2) (d) vests the Chief Administrator with authority to "[a]dopt rules and orders regulating practice in the courts as authorized by statute with the advice and consent of the administrative board of the courts, in accordance with the provisions of section thirty of article six of the constitution."

Thus, under State Constitution, article VI, § 28 (b), the Chief Administrator's administrative power derives from two sources: (1) authority delegated by the Chief Judge who constitutionally is imbued with plenary authority over matters of administration, and (2) authority conferred by some other provision of law (*see Bloom v Crosson*, 183 AD2d 341, 345 [1992], *affd* 82 NY2d 768 [1993]). However, the authority of the Chief Administrator with respect to policy formulation "is not broad and unlimited but is subject to being exercised in conformity with standards which have been established in accordance with constitutional prescription" (*Matter of Morgenthau v Cooke*, 56 NY2d 24, 33 [1982]). It is only with respect to the plenary authority to supervise the administration and operation of the Unified Court System delegated by article VI, § 28, as distinguished from policy formulation, that the Constitution "places no limitations on the duties the Chief Judge may delegate to the administrator" (*Corkum v Bartlett*, 46 NY2d 424, 429 [1979]; *see Matter of Met Council v Crosson*, 84 NY2d 328, 334-335 [1994]).

Under this state constitutional scheme, the authority to regulate the courts is divided between the Legislature and the Chief Judge (*see Bloom,* 183 AD3d at 344), who may delegate authority to the Chief Administrator. While under State Constitution, article VI, § 28 (b), the Chief Administrator is granted administrative and operational authority over the courts, under the authority delegated by article VI, § 30, any rules regulating jurisdiction, practice and procedure must be consistent with existing legislation and may be subsequently abrogated only by statute (*see People v Ramos*, 85 NY2d 678, 687-688 [1995] ["these sources of broad judicial rule-making authority do not afford *carte blanche* to courts in promulgating regulations" and "no court rule can enlarge or abridge rights conferred by statute"]; *Matter of A.G. Ship Maintenance Corp. v Lezak*, 69 NY2d 1 [1986]; *Lang v Pataki*, 271 AD2d 375, 376 [2000], *appeal dismissed* 95 NY2d 886 [2000]; *Bloom*, 183 AD3d at 345-346).

The impact of the establishment of the BCD and the transfer of *all* pending and future Bronx County criminal cases charging class A misdemeanors from the Bronx Criminal Court to the BCD under part 142 of the Rules of the Chief Administrator of the Courts far exceeds the routine operation and administration of the Unified Court System contemplated by State Constitution, article VI, § 28 (c) and Judiciary Law § 211 (1) (a) and § 212 (1) (c). Bypassing the legislative process and/or a constitutional amendment, part 142 imposes a policy determination that merges the Bronx Criminal Court and Bronx Supreme Court, marginalizing the Bronx Criminal Court and effectively restructuring the constitutional Unified Court System, the significance of which has not been discussed by the lower courts that have addressed the Chief Judge's and Chief Administrator's authority to promulgate parts 42 and 142, respectively.[3] Given this result, the Chief Judge's and Chief Administrator's "administrative" authority under State Constitution, article VI, § 28 and Judiciary Law § 211 (1) (a) and § 212 (1) (c) must yield to the Legislature's reserved power to regulate practice and procedure in the courts under article VI, § 30 and Judiciary Law § 211 (1) (b) and § 212 (2) (d) (*see Matter of Morgenthau v Cooke*, 56 NY2d 24 [1982], *supra*).

While the dissent complains that we unfairly label the Chief Judge's and Chief Administrator's exercise of their authority as "collapsing" or "eviscerating" the Bronx Criminal Court, it does not dispute that parts 42 and 142 effectively deprive the Criminal Court of its jurisdiction over class A misdemeanors, leaving the court a shell of its former self as a result of the merger.

Significantly, there is nothing in the State Constitution that contemplates the merger of the Bronx Criminal Court into the Supreme Court. True, State Constitution article VI, § 15 contemplated a possible future merger involving the city-wide criminal court, but this was a horizontal integration, not a vertical integration. Specifically, section 15 (a) provides that the Legislature shall by law establish "a single court of city-wide civil jurisdiction and a single court of city-wide criminal jurisdiction in and for the city of New York" and that "the legislature may, upon the request of the mayor and the local legislative

---

**3.** *See People v Jones*, 18 Misc 3d 63 (App Term, 1st Dept 2007), *lv denied* 10 NY3d 767 (2008); *People v Butler*, 11 Misc 3d 547 (Sup Ct, Bronx County 2005); *People v Marrero*, 8 Misc 3d 172 (Sup Ct, Bronx County 2005); *People v Gonzalez*, 6 Misc 3d 1034(A), 2005 NY Slip Op 50291(U) (Sup Ct, Bronx County 2005); *People v Barrow*, 6 Misc 3d 945 (Sup Ct, Bronx County 2005); *People v Robinson*, 6 Misc 3d 645 (Sup Ct, Bronx County 2004).

body of the city of New York, merge the two courts into one city-wide court of both civil and criminal jurisdiction." Similarly, State Constitution, article VI, § 7 (a) and § 15 (c) demonstrate that the State Constitution contemplated an increase in the jurisdiction vested in the New York City Criminal Court, providing that the Legislature may grant the Criminal Court "jurisdiction over misdemeanors prosecuted by indictment; and over such other actions and proceedings[ ] not within the exclusive jurisdiction of the supreme court" (NY Const, article VI, § 15 [c]), not the elimination of the Criminal Court's jurisdiction effected by part 142, which transfers all cases charging class A misdemeanors to the newly created BCD.

The argument that article VI, § 30 has no application because the first sentence limits the Legislature's power to alter and regulate jurisdiction and proceedings in law and in equity to "that it has heretofore exercised" before voters ratified the 1962 version of the article, at which time there was no unified court system, is untenable. This interpretation, in contravention of the constitutional and statutory provisions discussed above, would imbue the Chief Judge and Chief Administrator with absolute power over the Unified Court System and deprive the Legislature of any say whatsoever with respect to their policies. Indeed, it would render superfluous the balance of the section which provides that "[t]he legislature may, on such terms as it shall provide and subject to subsequent modification, delegate, in whole or in part, to a court, including the appellate division of the supreme court, or to the chief administrator of the courts, any power possessed by the legislature to regulate practice and procedure in the courts."

Moreover, State Constitution, article VI, § 33 provides that the Legislature "shall enact appropriate laws to carry into effect the purposes and provisions of this article, and may, for the purpose of implementing, supplementing or clarifying any of its provisions, enact any laws, not inconsistent with the provisions of this article, necessary or desirable in promoting the objectives of this article." The section is consistent with article VI, § 30 which states that the Legislature "shall have the same power to alter and regulate the jurisdiction and proceedings in law and equity that it has heretofore exercised," empowering the Legislature to stipulate the means by which the Supreme Court may exercise the broad discretion granted under State Constitution, article VI, § 7 (a) (*see Matter of Morgenthau v Roberts*, 65 NY2d 749 [1985]; *Rodriguez v Myerson*, 69 AD2d 162 [1979], *lv denied* 48 NY2d 606 [1979]).

No argument can seriously be made that part 142 does not

run afoul of article VI, § 30 because the BCD's rules and orders explicitly disclaim any change in procedure (22 NYCRR 143.3), and therefore do not significantly affect the legal relationship between litigating parties. Such an argument would overlook that the eradication of the Criminal Court's jurisdiction over class A misdemeanors caused by the promulgation of part 142 has altered the jurisdiction of this Court and the Appellate Term. Pursuant to the constitutional provision permitting the Appellate Division to establish Appellate Terms within its Departments (NY Const, art VI, § 8 [a]), an Appellate Term has been created in this Department to hear appeals from the New York City Civil Court and the New York City Criminal Court sitting in New York County and in Bronx County (*see* 22 NYCRR 640.1). Under this rule, appeals of convictions for class A misdemeanors emanating from the Criminal Court would be heard by the Appellate Term. Appeals from the trial and special terms of the Supreme Court are taken to the Appellate Division (*see* CPLR 5701). However, as a consequence of the creation of the BCD, which is part of the Supreme Court, convictions for class A misdemeanors in the Bronx have now been converted to Supreme Court judgments, which, under the current rules, has caused the appeals therefrom to be heard by this Court. In contrast, a similarly situated defendant convicted of a class A misdemeanor in any other criminal court within the City of New York does not have this presumed benefit and would have his appeal heard by the Appellate Term, the appropriate forum.

Applying State Constitution, article VI, § 30, there is no legislative authority for the promulgation of parts 42 and 142. As set forth above, the general laws that allow the Chief Judge and Chief Administrator to oversee court operations cannot override the constitutionally created structure of the Unified Court System and collapse courts vertically, regardless of how laudable is part 42's stated purpose of promoting the administration of justice in the Bronx courts by eliminating past and avoiding future backlogs.[4]

State Constitution, article VI, § 19 (a) does not provide the Chief Administrator with the requisite authority to promulgate

---

4. According to a June 2009 Report on the Merger of the Bronx Supreme and Criminal Courts, prepared jointly by the Committee on Criminal Courts and the Committee on Criminal Justice Operations of the Association of the Bar of the City of New York, the stated purpose of the merger has not been achieved in that it "has had the unintended consequence of creating a far greater backlog in felony trials" (at 2). The report recommends (at 9) that "[u]nless and until it can be demonstrated that Merger can be achieved without deleterious effects on the adjudication of felony cases, it must be deemed a failure which should not be extended to other counties."

part 142.[5] Article VI, § 19 (a) provides: *"As may be provided by law,* the supreme court may transfer to itself any action or proceeding originated or pending in another court within the judicial department other than the court of claims upon a finding that such a transfer will promote the administration of justice." (Emphasis added.)

Although section 19 (a) grants Supreme Court a self-executing and virtually unlimited right to transfer cases pending before it to another court with concurrent jurisdiction, it grants Supreme Court only a limited power, "[a]s may be provided by law," to "transfer to itself any action or proceeding originated or pending in another court within the judicial department" (*see Matter of Dalliessi v Marbach,* 56 AD2d 858 [1977]).

In *Dalliessi,* the Court granted a CPLR article 78 petition which sought to prohibit a Supreme Court Justice from taking any further action with respect to a case brought in the County Court. In so doing, the Court held, in pertinent part: "The State Constitution (art VI, § 19, subd a) provides, in relevant part, that 'the supreme court may transfer to itself any action or proceeding originated or pending in another court within the judicial department . . . upon a finding that such a transfer will promote the administration of justice.' However, this power is limited by an introductory phrase, 'as may be provided by law.' CPLR 325 sets forth the grounds for removal of cases by the Supreme Court from courts of limited jurisdiction and CPLR 326 establishes the 'procedure on removal.' CPLR 325 does not authorize a transfer on the grounds set forth by the court herein. Under CPLR 326 (subd [b]), an order of removal is required" (56 AD2d at 858).

Here, the transfer order is not "as provided by law" in that it conflicts with the legislative mandate embodied in CPL 210.05, which provides that "[t]he only methods of prosecuting an offense in a superior court are by an indictment filed therewith by a grand jury or by a superior court information filed therewith by a district attorney." As the Practice Commentaries to CPL 210.05 explain: "This section limits the trial jurisdiction of superior courts to offenses charged by Grand Jury indictment, or by superior court information . . . Accordingly, although superior courts have jurisdiction to try misdemeanors and petty offenses, as well as felonies, this section bars prosecution of

---

**5.** While the dissent posits that the power of the Chief Judge is free of the strictures that apply when individual transfers occur under State Constitution, article VI, § 19, this, as indicated above, is without merit and ignores that the Administrative Judge of Bronx County's order effecting the transfer references article VI, § 19 (a) as a source of his authority.

those offenses in a superior court where they are charged in an accusatory instrument other than an indictment or a superior court information" (Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 210.05, at 85).

Nothing suggests that the Legislature intended to empower the Chief Judge or his or her designee to authorize exceptions to CPL 210.05, which dictates the means by which the Supreme Court may exercise its jurisdiction. As the jurisdiction of the New York City Criminal Court is constitutionally mandated by State Constitution, article VI, § 15 (c), which vests the court with jurisdiction over crimes and other violations of law, other than those prosecuted by indictment, the Chief Judge and Chief Administrator cannot effectively restructure the Unified Court System to incapacitate the Bronx Criminal Court by administrative fiat alone and the Bronx merger was beyond their administrative powers.

CPL 10.30 (1) does not provide the Chief Administrator with the requisite statutory authority for part 142. Under CPL 10.30 (1) (b), the Criminal Court has "[t]rial jurisdiction of misdemeanors concurrent with that of the superior courts but subject to divestiture thereof by the latter in any particular case." "[I]n any particular case" contemplates the transfer of particular cases on a case by case basis, not a sweeping transfer of all present and future cases charging class A misdemeanors that has the effect of collapsing the constitutionally created Bronx Criminal Court, thereby altering the jurisdictional structure of the Unified Court System.

Nor does the Legislature's use of the phrase "any particular case" in CPL 10.30 (1) (b), rather than use of a phrase that expressly limits divestiture to cases commenced by indictment, invite the Supreme Court to divest the Criminal Court of jurisdiction in all cases, without exception. While CPL 10.20 (1) (b) grants the Supreme Court trial jurisdiction of misdemeanors "concurrent with that of the local criminal courts," this language simply accommodates the occasional prosecution of misdemeanors by indictment—a situation in which the Criminal Court would otherwise lack jurisdiction, necessitating a trial in Supreme Court (see Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 10.20).

Further, CPL 10.20 (2) provides that "[s]uperior courts have preliminary jurisdiction of all offenses, but they exercise such jurisdiction only by reason of and through the agency of their grand juries." Under CPL 1.20 (25): "[a] criminal court has 'preliminary jurisdiction' of an offense when, regardless of whether it has trial jurisdiction thereof, a criminal action for

such offense may be commenced therein, and when such court may conduct proceedings with respect thereto which lead or may lead to prosecution and final disposition of the action in a court having trial jurisdiction thereof."

Under CPL 100.05: "[t]he only way in which a criminal action can be commenced in a superior court is by the filing therewith by a grand jury of an indictment against a defendant who has never been held by a local criminal court for the action of such grand jury with respect to any charge contained in such indictment. Otherwise, a criminal action can be commenced only in a local criminal court, by the filing therewith of a local criminal court accusatory instrument."

Viewed together, CPL 10.20 (2), 1.20 (25) and 100.05 can only mean that although the superior court has original jurisdiction over a crime, an indictment must be handed down by a grand jury and filed in order to retain and exercise such jurisdiction (*see People v Harper*, 37 NY2d at 99 ["valid and sufficient accusatory instrument is a nonwaivable jurisdictional prerequisite to a criminal prosecution"]; *People v Jackson*, 153 Misc 2d 270, 271 [Sup Ct, Bronx County 1991] ["a court's jurisdiction over a defendant in felony cases must be based upon the decision of a Grand Jury as expressed in an indictment"]).

Further, while CPL 10.30 (1) (b) states that the Criminal Court's trial jurisdiction over misdemeanors is "subject to divestiture" by Supreme Court, CPL 170.20 and 170.25 are necessary to implement that divestiture.

CPL 170.20 (1) provides that "[i]f at any time before entry of a plea of guilty to or commencement of a trial of a local criminal court accusatory instrument containing a charge of misdemeanor, an indictment charging the defendant with such misdemeanor is filed in a superior court, the local criminal court is thereby divested of jurisdiction of such misdemeanor charge and all proceedings therein with respect thereto are terminated."

CPL 170.25 (1) provides that "[a]t any time before entry of a plea of guilty to or commencement of a trial of a local criminal court accusatory instrument containing a charge of misdemeanor, a superior court having jurisdiction to prosecute such misdemeanor charge by indictment may, upon motion of the defendant made upon notice to the district attorney, showing good cause to believe that the interests of justice so require, order that such charge be prosecuted by indictment and that the district attorney present it to the grand jury for such purpose."

There is no statutory authority for transfer of cases being prosecuted by misdemeanor information to Supreme Court un-

less the matter is referred to a grand jury and an indictment obtained, or the right to indictment waived and a superior court information filed (CPL 210.05; *see People v Gervais*, 195 Misc 2d 129 [Crim Ct, NY County 2003] [criminal court is divested of jurisdiction over felony complaint when indictment is filed with superior court]).

The dissent maintains that CPL 210.05 only limits how prosecutors invoke superior court jurisdiction, and does not bar superior courts from obtaining transfers from other courts and then applying the procedures of those courts. In support of its argument that CPL 210.05 is " 'not a limitation directed to the courts, but rather . . . to prevent prosecutorial excess,' " the dissent quotes from *People v Keizer* (100 NY2d 114, 119 [2003]) and *People v Ford* (62 NY2d 275, 282 [1984]) and cites *People v Iannone* (45 NY2d 589, 594 [1978]). However, the quotes from the cited cases actually refer to article I, § 6 of the NY Constitution, not CPL 210.05. The power of the Supreme Court to transfer cases to itself is circumscribed by article VI, § 19 (a), which enables it to do so "[a]s may be provided by law." Hence, article VI, § 19 (a) stands as a statutory obstacle to prosecution in a superior court by an accusatory instrument other than indictment or prosecutor's information.

Nor is CPL 210.05 unconstitutional because it restricts the Supreme Court's jurisdiction. As detailed above, the State Constitution grants the Legislature the authority to provide for the manner in which the Supreme Court transfers an action or a proceeding originated or pending in another court (*see* NY Const, art VI, § 19). Further, article VI, § 7 (a)'s broad grant of jurisdiction to the Supreme Court is subject to "the exceptions, additions and limitations created and imposed by the constitution and laws of the state" (Judiciary Law § 140-b; *see Sohn v Calderon*, 78 NY2d 755, 766 [1991]).

In this regard, "trial jurisdiction" is defined in terms of whether a particular accusatory instrument "may properly be filed with such court" and whether "such court has authority to . . . try . . . such accusatory instrument" (CPL 1.20 [24]). Although superior courts have jurisdiction to try misdemeanors and petty offenses, as well as felonies, CPL 210.05 bars prosecution of those offenses in a superior court where they are charged in an accusatory instrument other than an indictment or a superior court information. In this way, the section regulates the manner in which a misdemeanor can be presented to the Supreme Court, which may only exercise its jurisdiction over misdemeanors when the prescribed procedure is followed.

Thus, the State Constitution grants the Legislature the power

to enact statutes, such as CPL 210.05, which implements the jurisdiction of courts and those statutes are part of a legitimate legislative scheme to delineate functions of the constitutionally created Criminal Court of the City of New York and reconcile its operation with the constitutionally mandated jurisdiction of the Supreme Court (*see People v Barrow*, 6 Misc 3d 945 [2005], *supra*).

We also note that while not dispositive, past efforts to restructure the Unified Court System, and to eliminate the Criminal Court, were attempted by proposing amendments to the constitution, without success (*see* Judith S. Kaye, Chief Judge of the State of New York, State of the Judiciary Report, Jan. 23, 2005, at 63 [citing NY Senate Bill S7510, a court merger bill introduced in the Senate but not enacted]).

Based on the foregoing, the promulgation of part 142 was beyond the authority of the Chief Administrator. Since the Chief Administrator was without authority to order the transfer, the Supreme Court never acquired jurisdiction to try and sentence defendant under a misdemeanor information (CPL 210.05; *see People v Harper*, 37 NY2d at 99; *People v Wiltshire*, 23 AD3d 86, 88 [2005], *lv denied* 6 NY3d 840 [2006] [Supreme Court does not have jurisdiction to proceed on a felony complaint]).

Accordingly, we reverse defendant's conviction and, given that he has completed his sentence, dismiss the misdemeanor information (*see People v Flynn*, 79 NY2d 879, 882 [1992]). Concur—Andrias, J.P., Nardelli, Catterson and DeGrasse, JJ.

Acosta, J., dissents in a memorandum as follows: By striking down the Bronx Criminal Division (BCD) and limiting the historically broad jurisdiction of the Supreme Court, the majority today, demonstrating unbridled judicial activism, effectively upends tens of thousands of misdemeanor convictions adjudicated in Bronx County over the last five years and threatens to diminish the independence of the Judiciary. Because I believe that the Legislature, cognizant of the great wisdom inherent in the separation of powers doctrine, delegated to the Chief Judge the authority to create the BCD, and because Supreme Court unquestionably possesses the jurisdiction to adjudicate nonindicted misdemeanors, I dissent.

This appeal arises from a controversy between the People of the State of New York and a criminal defendant named Edgar Correa. Neither Mr. Correa nor the People challenged the jurisdiction of the Supreme Court to adjudicate Mr. Correa's misdemeanor case, or the authority of the Chief Judge to create the BCD during the trial proceedings. Nor did Mr. Correa raise such a challenge in his initial brief before this Court. In fact, the is-

sue the majority reaches out to decide today arises because the majority itself invited the litigants (and the Office of Court Administration, but not the Legislature or the Attorney General) to brief this judicially created issue after the completion of oral arguments.

It is in this run-of-the-mill criminal appeal from a violation conviction (harassment in the second degree), that the majority today impedes the Chief Judge's rightful authority to implement court reform and in the process undermines the legal basis for the long-established integrated domestic violence courts and the other problem-solving courts, where Supreme Court routinely exercises jurisdiction over nonindicted misdemeanors.[1]

Notably, although the majority goes out of its way to protect the Legislature's so-called "reserved primary power to alter and regulate jurisdiction, practice and procedure" in the courts, the Legislature itself has not sought to intervene in this separation of powers controversy. Nor has the Legislature otherwise challenged the authority of the Chief Judge to create the BCD since its formation in 2004. It is perplexing that the majority would choose to decide this separation of powers controversy when one of those powers—the legislative branch, whose "legislative process" the Chief Judge allegedly "[b]ypass[ed]" by creating the BCD—is conspicuously absent from the whole litigation.

The absence and silence of the legislative branch aside, it is difficult to understand why the majority strains to decide these issues and create the chaos that would result from the majority's decision, when the same issues are currently before the Court of Appeals in *People v Wilson* (59 AD3d 153 [2009], *lv granted* 12 NY3d 790 [2009] [specifically, according to the preliminary statement, the "claimed impropriety in transfer of cases from criminal court to supreme court" is before the Court]), especially since the Court of Appeals has already approved the formation of the BCD in 2004 pursuant to the mandatory requirement of article VI, § 28 (c) of the New York Constitution.[2] Although the majority properly acknowledges that the "authority to regulate the courts is divided between the Legislature and the Chief

---

1. *See* Wise, *Judges Fire Queries on Court Merger Coming in Bronx*, NYLJ, Oct. 29, 2004, at 1, col 3; *see also People v Turza*, 193 Misc 2d 432 (Sup Ct, Suffolk County 2002) (upholding transfer of misdemeanor cases to Supreme Court).

2. The Court of Appeals denied leave to appeal in the only appellate case which squarely addressed the issues raised here (*see People v Jones*, 18 Misc 3d 63 [App Term, 1st Dept 2007], *lv denied* 10 NY3d 767 [2008] [upholding constitutionality of Bronx merger]).

Judge," it is the majority—not the Legislature, not the Chief Judge, not the Chief Administrative Judge, not the Administrative Board of the Court and not the Court of Appeals—which boldly and proactively "regulates" the operation of the courts today.

Having created the controversy—a controversy which, I believe, does not actually exist—the majority then decides it by usurping the authority statutorily given to the Legislature and the Chief Judge, and wreaking havoc not only in Bronx County, but numerous courtrooms across the state, where the rationale for the problem-solving courts would be undermined. Remarkably, the majority does this not in the name of judicial independence but in the name of legislative prerogative—on behalf of a legislative body which has not uttered a single word against the creation of the BCD. Under these circumstances, judicial restraint, not judicial activism, is warranted.

Assuming for the sake of argument that this "controversy" is properly before us, I disagree with the majority's holding that the Supreme Court's jurisdiction in criminal cases is limited to offenses charged by grand jury indictment or by superior court information. Thus, in my opinion, these cases hinge on whether the Chief Judge and the Chief Administrator have the authority to transfer cases for adjudication in the BCD. After reviewing the relevant constitutional and statutory provisions, it is my opinion that the Chief Judge and Chief Administrator acted well within their authority.

New York Constitution, article VI, § 7 (a) states, in relevant part: "The supreme court shall have general original jurisdiction in law and equity . . . In the city of New York, it shall have exclusive jurisdiction over crimes prosecuted by indictment, provided, however, that the legislature may grant to the city-wide court of criminal jurisdiction of the city of New York jurisdiction over misdemeanors prosecuted by indictment." (*See also* Judiciary Law § 140-b.)[3] This constitutional grant of jurisdiction is "unlimited and unqualified" (*Matter of Fry v Village of Tarrytown*, 89 NY2d 714, 718 [1997] [internal quotation marks omitted]; *see Pollicina v Misericordia Hosp. Med. Ctr.*, 82 NY2d

---

**3.** Judiciary Law § 140-b states: "The general jurisdiction in law and equity which the supreme court possesses under the provisions of the constitution includes all the jurisdiction which was possessed and exercised by the supreme court of the colony of New York at any time, and by the court of chancery in England on the fourth day of July, seventeen hundred seventy-six, with the exceptions, additions and limitations created and imposed by the constitution and laws of the state. Subject to those exceptions and limitations the supreme court of the state has all the powers and authority of each of those courts and may exercise them in like manner."

332, 339 [1993] [Legislature may not impede even "one particle of (Supreme Court's) jurisdiction" (quoting *Matter of Malloy*, 278 NY 429, 432 [1938])]; *Sohn v Calderon*, 78 NY2d 755, 766 [1991]; *Kagen v Kagen*, 21 NY2d 532, 537 [1968]), rendering the Supreme Court "competent to entertain all causes of action[ ]" unless its jurisdiction is specifically proscribed (*Thrasher v United States Liab. Ins. Co.*, 19 NY2d 159, 166 [1967]; *see also Motor Veh. Mfrs. Assn. of U.S. v State of New York*, 75 NY2d 175, 184 n 3 [1990] [Supreme Court has jurisdiction over all claims arising in law or equity; "Legislature may grant concurrent jurisdiction to other courts of limited jurisdiction"]). The only such permissible limit on the Supreme Court's jurisdiction is to divest from the Supreme Court new actions not traditionally known at law or equity (*see Sohn* at 766; *Loretto v Teleprompter Manhattan CATV Corp.*, 58 NY2d 143, 152-153 [1983]; NY Const, art VI, § 7 [b]). Any other attempt to limit the Supreme Court's jurisdiction is void (*see Busch Jewelry Co. v United Retail Employees' Union*, 281 NY 150, 156 [1939]; *Matter of Malloy*, 278 NY 429, 432 [1938]; *People ex rel. Swift v Luce*, 204 NY 478, 487 [1912]; *People v Darling*, 50 AD2d 1038 [1975]; *Jones*, 18 Misc 3d at 65).

The Supreme Court has enjoyed misdemeanor jurisdiction continuously since its inception as the Supreme Court of Judicature in 1691 (*see* 1 Lyon, Colonial Laws of New York [1664-1719], at 229; *Darling*, 50 AD2d at 1038-1039; *People ex rel. Folk v McNulty*, 256 App Div 82, 90-91 [1939] [tracing Supreme Court jurisdiction to English Court of Kings Bench, which could divest lower courts of jurisdiction], *affd* 279 NY 563 [1939]; *People ex rel. Constantinople v Warden of Rikers Is.*, 72 Misc 2d 906 [Sup Ct, Bronx County 1972]; *People v Ruttles*, 172 Misc 306 [Sup Ct, Orange County 1939]). As such, misdemeanors constitute a "traditional categor[y] of actions at law and equity," jurisdiction over which article VI irrevocably vests in the Supreme Court concurrent with such other courts as the Legislature may provide (*Sohn*, 78 NY2d at 766).

Although article VI, § 15 (a) called for the creation of a citywide criminal court and section 15 (c) vested that court with jurisdiction over nonfelonies, those provisions did not divest Supreme Court of its original general jurisdiction. Indeed, article VI, § 15 (d) specifically provides that "provisions of this section shall in no way limit or impair the jurisdiction of the supreme court as set forth in section seven of this article." Notably, the Criminal Court was not vested with "exclusive" jurisdiction over nonindicted misdemeanors and lesser offenses in the manner in which Supreme Court was for crimes prosecuted by

indictment. Thus, the Supreme Court, a superior court (*see* CPL 10.10 [2] [a]), enjoys both "[t]rial jurisdiction of misdemeanors concurrent with that of the local criminal courts" (CPL 10.20 [1] [b]), including the New York City Criminal Court (*see* CPL 10.10 [3] [b]), and the power to divest the Criminal Court of its trial jurisdiction "in any particular case" without exception (CPL 10.30 [1] [b]).

Although the majority cites to various statutory provisions to conclude that Supreme Court's jurisdiction is limited to adjudicating indicted misdemeanors (and indicted felonies and superior court informations), the majority simply cannot get around the plain language and obvious import of the long-standing constitutional and statutory provisions. Read together, these provisions demonstrate that the Supreme Court—a court of "general original jurisdiction in law and equity" (NY Const, art VI, § 7 [a])—has jurisdiction over all criminal matters and that its jurisdiction is exclusive with respect to felonies, which must be prosecuted by indictment or superior court information.

CPL 210.05, which states that "[t]he only methods of prosecuting an offense in a superior court are by an indictment filed therewith by a grand jury or by a superior court information filed therewith by a district attorney," does not alter this result inasmuch as it does not limit the superior court's jurisdiction, but only the method for *prosecutors* to invoke that jurisdiction, and thus does not bar a superior court from itself obtaining a case pursuant to a proper transfer order: "By choosing the words 'prosecution' and 'prosecute,' it is clear that the Legislature was directing [CPL 210.05] to the district attorneys, whose job it is to prosecute, and not to the courts. Courts do not have the power to 'prosecute' cases; that job is constitutionally exercised by the executive branch of the government, through its agents, the district attorneys. (*Matter of McDonald v Sobel*, 272 App Div 455, 461 [2d Dept 1947], *affd* 297 NY 679 [1947].) Decisions about whether a case is to be prosecuted by indictment are usually left to the district attorney. (*See People v Di Falco*, 44 NY2d 482, 487 [1978].) Because of the specific words chosen by the Legislature, CPL 210.05 should be read only as an 'act of sanction,' and not as an act intending to limit the power of the superior courts, conveyed via the Constitution, to preside over misdemeanor cases. (*See People v Allen*, 301 NY 287, 289-290 [1950].)" (*People v Marrero*, 8 Misc 3d 172, 178-179 [Sup Ct, Bronx County 2005] [upholding BCD].)

As *Marrero* noted, CPL 210.05 relates back to the CPL 170.20 invitation that the People, prior to entry of a guilty plea to or

commencement of a trial of a local criminal court accusatory instrument, may adjourn the proceedings to present a nonfelony charge to a grand jury (*see* CPL 170.20 [2]). By thus obtaining and filing an indictment, the *prosecutor* divests the local criminal court of its jurisdiction (*see* CPL 170.20 [1]). Likewise, a defendant may apply for an order directing the People to present the charge to a grand jury (*see* CPL 170.25 [1]), and on the filing of an indictment, the prosecutor likewise divests the local criminal court of jurisdiction (*see* CPL 170.25 [2]; *see also People v Jones*, 18 Misc 3d at 65 [CPL 210.05 "is directed at the District Attorney," and it "circumscribes a prosecutor's ability to invoke a superior court's jurisdiction," not the court's independent ability to assert jurisdiction]). As *Jones* points out, the absence of an indictment is not fatal to the BCD's capacity for trying misdemeanor informations, both because article I, § 6 constitutional limitations on felony prosecutions are not implicated and because, pursuant to CPL 100.10 (1), an information is a sufficient basis for both the commencement and the prosecution of a misdemeanor case (*Jones* at 65-66).

This construction of CPL 210.05 is consistent with its legislative history, which shows that the statute's sole purpose was to implement a now-relaxed right to indictment of all crimes in all courts, not to limit the Supreme Court's powers as against those of local courts.[4] After all, the indictment requirement to which CPL 210.05 refers is " 'not a limitation directed to the courts,

4.  CPL 210.05 derives from section 222 of the 1888 Code of Criminal Procedure, which effectuated the then-applicable requirement that all crimes be prosecuted by indictment regardless of the offense charged or the court adjudicating it, but which later was amended to allow defendants to waive grand jury presentation: "All crimes prosecuted in a supreme court, or in a county court, or in a city court, must be prosecuted by indictment. But, where a defendant has been held to answer to any of these courts, that court, or any of said courts to which he might have been held to answer, may, on the application in writing of the defendant, direct any information to be filed against him for the offense for which he stands charged . . . When the information is filed, the defendant must be arraigned thereon and the court must proceed to trial in the same manner as if an indictment had been presented by a grand jury." (Code Crim Pro § 222, as amended by L 1927, ch 597.)

In 1928, the Court of Appeals struck down the amended Code of Criminal Procedure § 222 because the Constitution did not then allow waiver of grand jury presentation of felonies (*see People ex rel. Battista v Christian*, 249 NY 314, 318-319 [1928]). In 1941, partly to relieve the resulting spike in superior court arraignments, the Judiciary proposed a Uniform City Court Act to vest in the city courts concurrent trial jurisdiction of crimes prosecuted by information and preliminary jurisdiction to arraign all offenses (*see* 7th Ann Report of NY Jud Council, at 153-260 [1941]). In adopting that proposal, lawmakers restored Code of Criminal Procedure § 222 by excising the waiver clause that *Battista* had struck down (*see* L 1941, ch 255, § 11).

but rather to the State, and its function is to prevent prosecutorial excess' " (*People v Keizer*, 100 NY2d 114, 119 [2003], quoting *People v Ford*, 62 NY2d 275, 282 [1984]; *see People v Iannone*, 45 NY2d 589, 594 [1978]; *Jones*, 18 Misc 3d at 65). To that end, the purpose of CPL 210.05 is only to limit prosecutorial discretion to invoke a superior court's jurisdiction (*see Jones*, 18 Misc 3d at 65; *Marrero*, 8 Misc 3d at 179; *People v Turza*, 193 Misc 2d at 434), a purpose likewise manifest in CPL article 170. Here, by contrast, the challenged BCD proceedings cannot possibly suggest prosecutorial excess because the Judiciary and not the People effected the transfer of appellant's case.

Given that Supreme Court has jurisdiction over nonindicted misdemeanors, the only issue that remains, in my opinion, is whether the Chief Judge and Chief Administrator have the authority to direct the transfer of cases to the BCD. Although the majority unfairly labels the exercise of this authority as "collapsing" or "eviscerat[ing]" the Criminal Court, the authority to divest and transfer cases is expressly provided by article VI, § 28 of the State Constitution and sections 211 and 212 of the Judiciary Law.

Initially, although parts 42 and 142 cast a wide net in transferring "some or all classes of cases pending in the Criminal Court of the City of New York in Bronx County in which at least one felony or misdemeanor is charged therein" (22 NYCRR 42.1 [c]), it is inaccurate to assert that the BCD "collapse[d]" or "eviscerate[d]" the Criminal Court inasmuch as the Criminal Court in Bronx County continues to exist, arraigning tens of thousands of cases each year and otherwise adjudicating tens of thousands of accusatory instruments charging violations and summonses charging violations and unclassified misdemeanors (Criminal Court of the City of New York Annual Report 2008, at 24, 27, 39 [published by the Office of the Deputy Chief Administrative Judge, New York City]). The annual report

---

The statute continued unchanged until the 1971 Legislature recodified the Code of Criminal Procedure as the modern Criminal Procedure Law, converting the section 222 mandate that "[a]ll crimes" be indicted into the CPL 210.05 provision that the "only" way to prosecute would be by indictment (*see* L 1970, ch 996). Critically, this recodification effected no change in meaning: as Governor Rockefeller wrote, the CPL's purpose was to rationalize disparate lower court systems, not infringe the Supreme Court's powers (*see* Governor's Mem approving L 1970, ch 966, 1970 McKinney's Session Laws of NY, at 3140; Comm on Rev of Penal Law and Crim Code Mem in Support, 1970 NY Legis Ann, at 37). In 1973, voters addressed the 1928 *Battista* decision by amending the Constitution to allow prosecution by SCI (superior court information) (*see* NY Const, art I, § 6). The Legislature then achieved the current CPL 210.05 by conforming it to this new SCI authority (*see* L 1974, ch 467, § 13).

indicates that in 2008 Bronx Criminal Court adjudicated 120,331 summonses (*id.* at 39) and 76,923 cases in arraignments (*id.* at 27). Most of the cases arraigned were misdemeanors (57,588 out of 76,923) and half (48.9%) of the cases arraigned were disposed of in Bronx Criminal Court (38,323 dispositions out of 76,923 arraigned cases) (*see id.* at 36). Given the foregoing statistics, it is likewise completely inaccurate to assert that the creation of the BCD "depriv[ed] [Bronx Criminal Court] of its jurisdiction over class A misdemeanors."

In any event, article VI, § 28 specifically empowers the Chief Judge to direct the transfer of cases when the interests of effective court administration so require. Judiciary Law § 211 (1) (a) provides that "[t]he chief judge, after consultation with the administrative board, shall establish standards and administrative policies for general application to the unified court system throughout the state, including but not limited to standards and administrative policies relating to . . . [the] transfer of judges and causes among the courts of the unified court system." This legislative articulation of the Chief Judge's authority, which derives from section 28 of article VI, reflects the well-settled constitutional law that the power to transfer cases—independent of CPL provisions governing Supreme Court divestiture of criminal court actions (*see* CPL 170.20 [1]; 170.25 [1])—resides in the Chief Judge to effectuate systemic interests of efficient court administration. The only conditions on this authority are that the transferee court must have jurisdiction over the subject matter of the transferred case and the Chief Judge must first consult with the Administrative Board of the Courts and then obtain Court of Appeals consent before promulgating standards and administrative policies effectuating the transfer (*see* NY Const, art VI, § 28 [c]; Judiciary Law § 211 [1]).

Moreover, the Legislature vested in the Chief Administrative Judge the power to fix "terms and parts of court . . . and make necessary rules therefor" (Judiciary Law § 212 [1] [c]). This authority likewise flows from article VI, which vests in the Chief Administrative Judge such power as the Chief Judge delegates and such further power as the Legislature prescribes (*see* NY Const, art VI, § 28 [b]).

Thus, section 28 and Judiciary Law § 211 (1) invite the Chief Judge to direct the transfer of cases among the courts after consulting the Administrative Board and with consent of the Court of Appeals. The only limit on this power is that transferred cases must be routed to courts that the Constitution vests with subject matter jurisdiction over them. Of course, the Chief Judge

may exercise this authority when systemic needs of effective court administration so require. Section 28, however, does not impose on the Chief Judge the obligation to obtain legislative consent prior to exercising this authority. To do so would vitiate the intent of the framers and the Legislature that section 28 separately empowers the Chief Judge to use such transfers to serve the system-wide administration of justice, free of the strictures that apply when individual courts transfer cases under section 19 alone.[5] Moreover, any other result would belie the well-settled separation of powers axiom that core section 28 powers of court administration, including the Chief Judge's administrative transfer power, are "complete" and cannot be defeated by statute (*Matter of Met Council v Crosson*, 84 NY2d 328, 335 [1994]; *Matter of Bellacosa v Classification Review Bd. of Unified Ct. Sys. of State of N.Y.*, 72 NY2d 383, 388 [1988]; *Corkum v Bartlett*, 46 NY2d 424, 429 [1979]; *cf. McCoy v Helsby*, 28 NY2d 790, 791 [1971] [protecting Judiciary's "basic fibre of administrative power" against statutory intrusion]).

Accordingly, the Chief Judge, after consulting the Administrative Board and with consent of the Court of Appeals, properly promulgated part 42 to provide for the BCD's creation and the transfer of Criminal Court cases to reduce calendar congestion and ensure efficient judicial administration (*see* NY Const, art VI, § 28 [c]; Judiciary Law § 211 [1] [a]). Because the Chief Administrative Judge must supervise the operation of the courts on the Chief Judge's behalf in accordance with such delegations and standards and administrative policies as the Chief Judge may provide (*see* NY Const, art VI, § 28 [b]; Judiciary Law § 212 [1]), part 142 and the subsequent administrative orders effectuating the Chief Judge's part 42 directive were valid. Thus, the BCD's transfer and adjudication of Criminal Court cases pursuant to the foregoing rules and administrative orders also were valid.

Once superior courts obtain trial jurisdiction over cases by proper transfer order moving the cases from local criminal courts, the CPL 210.05 provisions governing how prosecutors would invoke that same jurisdiction become moot. How superior courts then handle the transferred cases turns on what rules then govern them. Here, transferred Criminal Court cases proceed in the BCD under the same substantive and procedural laws as apply in the Criminal Court (*see* Rules of Chief Administrator of Cts [22 NYCRR] § 142.3).

---

**5.** Criminal Procedure Law § 10.30 (1) (b) states that the Supreme Court has the power to divest the Criminal Court of its trial jurisdiction "*in any particular case*" (emphasis added).

Contrary to the majority's holding, this result is not inconsistent with article VI, § 30 of the State Constitution. That section states: "The legislature shall have the same power to alter and regulate the jurisdiction and proceedings in law and in equity that it has heretofore exercised. The legislature may, on such terms as it shall provide and subject to subsequent modification, delegate, in whole or in part, to a court, including the appellate division of the supreme court, or to the chief administrator of the courts, any power possessed by the legislature to regulate practice and procedure in the courts. The chief administrator of the courts shall exercise any such power delegated to him or her with the advice and consent of the administrative board of the courts. Nothing herein contained shall prevent the adoption of regulations by individual courts consistent with the general practice and procedure as provided by statute or general rules." Indeed, section 30 limits the Legislature to such procedural powers as it "heretofore exercised" before voters ratified the 1962 version of article VI (NY Const, art VI, § 30). Before 1962, however, there was no Unified Court System, no central court administration and no administrative transfer power. As section 30 merely continued the Legislature's then-existing procedural powers while section 28 created a new centralized administrative transfer power in that same year, section 30 cannot possibly empower the Legislature to limit section 28 transfers. That result reinforces the separation of powers axiom that no statute can impede the Judiciary's "complete" section 28 self-governance powers (see Met Council, 84 NY2d at 335; Bellacosa, 72 NY2d at 388; Corkum, 46 NY2d at 429; cf. McCoy, 28 NY2d at 791).

Moreover, the Court of Appeals has instructed that nothing in section 30 bars the Judiciary from enacting rules that hold harmless the rights of litigating parties (cf. People v Ramos, 85 NY2d 678, 687-688 [1995] [section 30 generally bars court rules that "invade recognized rights of person or property," "significantly affect the legal relationship between litigating parties" or otherwise "enlarge or abridge rights" (quoting McQuigan v Delaware, Lackawanna & W. R.R. Co., 129 NY 50, 55 [1891])]). The BCD's rules and orders, by contrast, explicitly disclaim any such change in procedure (see 22 NYCRR 142.3 [each case transferred to the BCD "shall be subject to the same substantive and procedural law as would have applied to it had it not been transferred"]). Because procedures fixed by the Legislature for trying misdemeanors continue to apply unchanged after transfer, the BCD does not impair or abridge any litigant's procedural rights under Ramos. Thus, far from intruding on the Legislature's section 30 powers, section 142.3 fully respects their exercise.

Even if section 30 could extend to case transfers and bar the BCD's rules underlying the transfer and adjudication of defendant's case, section 30 invites the Legislature to delegate its procedural powers either to individual courts or the Chief Administrative Judge (*see* NY Const, art VI, § 30). Here the Legislature did both. To the Supreme Court, the Legislature delegated the CPL 10.30 (1) (b) power to divest "any particular case" from local courts. To the Chief Administrative Judge, the Legislature delegated the power to establish "terms and parts of court . . . and make necessary rules therefor" consistent with the Chief Judge's directives (Judiciary Law § 212 [1] [c]). These delegations fully support the transfer of defendant's case for disposition in the BCD.

Finally, the majority's heavy reliance upon New York Constitution, article VI, § 15 (a), which directs the Legislature to "by law establish a single court of city-wide civil jurisdiction and a single court of city-wide criminal jurisdiction in and for the city of New York," ignores the import of section 15 (d), which provides that the creation of such a city-wide court "shall in no way limit or impair the jurisdiction of the supreme court." In other words, the Legislature's creation of a single court of city-wide criminal jurisdiction does not in any way limit Supreme Court's general jurisdiction, or its broad authority to transfer cases or divest cases from the court of city-wide criminal jurisdiction.

In short, by conferring the transfer power in such broad terms to the Chief Judge (Judiciary Law § 211 [1] [a]) and to the Supreme Court (CPL 10.30 [1] [b]), the legislative branch properly recognized that the independent, third branch of government—the Judiciary—was in the best position to implement modifications pursuant to article VI, § 28 designed to make court operations more efficient, even significant modifications which merge Criminal Court into Supreme Court.

I, too, recognize that the Legislature should have a say in the policy decisions regarding the operation of the courts. And they have said their piece loudly and clearly—in Judiciary Law § 211 (1) (a), in CPL 10.20 (1) (b), in CPL 10.30 (1) (b), and in Judiciary Law § 212 (1) (c).